

COPY

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; CAROLINE RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MAVERICK RECORDING COMPANY; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; WARNER BROS. RECORDS INC.; and ZOMBA RECORDING LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | **07 CIV 8822** |
| Plaintiffs, | ) ) ) | **COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | ) ) | |
| USENET.COM, Inc. | ) ) | |
| Defendant. | ) ) ) | |



Plaintiffs allege as follows:

## INTRODUCTION

1.       For much of the past decade, copyright owners, including the record companies that are plaintiffs in this action, have been plagued by rampant copyright piracy occurring through unlawful peer-to-peer ("P2P") file sharing and other illicit internet-based services. Courts around the country – including the United States Supreme Court – have rendered decisions making it plain that such services facilitate and induce massive copyright infringement. As a result, notorious P2P services such as the original Napster, Aimster, Grokster and Kazaa have been forced either to shut down or to become legitimate services providing access to licensed rather than pirated works. In the wake of these developments, users displaced from these services have sought alternate means to continue the easy and large-scale infringement to

which they have become accustomed. Defendant and companies like it have rushed to fill the void by providing their customers with convenient – and unauthorized – access to copyrighted music.

2.    Defendant sells access to a body of content from a global network of computers known as "Usenet," as well as from Defendant's own users, that contains (without authorization) millions of copyrighted sound recordings. Defendant touts its service as a haven for those seeking pirated content, claiming that it provides "[t]oday's hottest way of sharing MP3 files over the Internet" without getting caught. *Mp3 Newsgroups, available at* www.usenet.com/articles/mp3_newsgroups.htm (last visited October 5, 2007) (attached hereto as Exhibit B). Defendant boasts further that its service is the best way to get "free" music now that "[f]ile sharing websites are getting shut down." *Free Download, available at* www.usenet.com/articles/free_download.htm (last visited October 5, 2007) (attached hereto as Exhibit C).

3.    Defendant's service enables and encourages its customers to reproduce and distribute millions of infringing copies of Plaintiffs' valuable copyrighted sound recordings. Defendant does so by loading online bulletin boards or "newsgroups" obtained from the Usenet network onto its servers. Defendant then sells access to the newsgroups it has chosen to host through its "Usenet.com" Usenet service. Many of the newsgroups that Defendant chooses to offer are explicitly dedicated to copyright infringement. Users of Defendant's service post copyrighted sound recordings to these newsgroups on Defendant's servers; the works are identified by artist and title so that users can easily find any sound recording they might want to copy. Those copyrighted works are then propagated worldwide, allowing millions of users of the

Usenet network, including Defendant's own subscribers, to copy copyrighted sound recordings with ease and anonymity – and without authorization.

4.      Defendant provides essentially the same functionality that P2P services such as Napster, Aimster, Grokster and Kazaa did (prior to being enjoined by the federal courts) – knowingly providing the site and facilities for users to upload and download copyrighted works – except that the Defendant goes further than even the P2P services to facilitate and encourage copyright infringement by its users.  Defendant customizes its service to make it as convenient and seamless as possible for subscribers to distribute and obtain copyrighted music without authorization and without paying for that music.  Finding and downloading copyrighted works for free from Defendant's servers takes just a few simple steps, whether through Defendant's own web interface or a newsreader program.  *See* Exhibit D, attached hereto (screen shots of process).  Defendant offers faster downloading capabilities than P2P services because Defendant hosts the infringing files on its own, commercial-grade servers.  Defendant offers ever-increasing storage times for those infringing files, providing longer and longer access to that material by users.  And Defendant promises infringers an anonymity they do not enjoy on P2P services, boasting that it does not track user uploading or downloading of files, but instead provides "anonymous[]" access because "your IP address cannot be tracked, and your downloads cannot be monitored." *Premium Usenet and Newsgroup Access:  Secure-Tunnel, available at* http://www.usenet.com/secure_tunnel.htm (last visited October 5, 2007) (attached hereto as Exhibit E).

5.      As a direct result of Defendant's conduct, thousands of the most popular sound recordings – and even works not yet available to the general public – are infringed every day.  Absent Defendant's active and ongoing participation in the daily acts of infringement, this

widespread unauthorized copying and distribution of Plaintiffs' valuable property could not happen on the scale that it does. The harm to Plaintiffs, who invest millions of dollars and enormous creative energies to produce their creative copyrighted works, is manifest and irreparable.

## JURISDICTION AND VENUE

6.    This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

8.    This Court has personal jurisdiction over the Defendant. On information and belief, Defendant has chosen to direct its infringing activities at New York, including by entering into contracts and other arrangements with residents of New York and by enabling New York residents to access infringing files through Defendant's newsgroup service. The voluminous acts of direct infringement for which Defendant is liable require a high level of interaction between users' computers and Defendant's website and/or servers. Thus, Defendant does continuous and systematic business in New York and is hence present in New York, *see* N.Y. C.P.L.R. § 301, transacts business in New York, and contracts to supply goods and services in New York in connection with the matters giving rise to this suit. *See id.* § 302(a)(1). Defendant also commits infringing acts outside of New York causing injury to Plaintiffs in New York, and Defendant regularly does or solicits business in New York, and/or derives substantial revenue from goods or services rendered in New York, and/or reasonably should expect its infringing conduct to have consequences in New York and derives substantial revenue from interstate commerce. *See id.* § 302(a)(3).

9.    Venue in this District is proper under 28 U.S.C. § 1391(b), (c), and/or 28 U.S.C. § 1400(a). On information and belief, Defendant may be found in this District, and/or a substantial part of the acts of infringement complained of herein occurs or has occurred in this District. In addition, Plaintiffs Arista Records LLC, Atlantic Recording Corporation, BMG Music, Capitol Records, Inc., Caroline Records, Inc., Elektra Entertainment Group, Inc., LaFace Records LLC, Sony BMG Music Entertainment, Virgin Records America, Inc. and Zomba Recording LLC have their principal places of business in New York and in this District; Plaintiffs Interscope Records and UMG Recordings, Inc. each has a place of business in New York and in this District; all Plaintiffs have been injured in New York by Defendant's infringing conduct.

## THE PARTIES

### The Plaintiffs

10.    Plaintiffs are among the most well-known and respected record companies in the United States and the world. They are in the business of producing, manufacturing, distributing, selling, and licensing the distribution and sale of sound recordings, or arranging to do so, in the United States. The reputations of Plaintiffs as producers of sound recordings containing high artistic and technical quality are favorably known in the State of New York, and throughout the United States and the world.

11.    Plaintiffs, including their affiliates and/or subsidiaries, are the copyright owners or owners of exclusive rights under copyright with respect to the vast majority of copyrighted sound recordings legitimately sold in the United States. Each Plaintiff enjoys exclusive rights of reproduction and distribution as to its copyrighted works. 17 U.S.C. § 106.

12.    In addition to manufacturing, distributing, selling, and licensing phonorecords in the form of CDs, cassettes and other tangible media, Plaintiffs also sell, distribute and license

5

phonorecords in the form of digital audio files, which are marketed and sold online, and delivered to the consumer instantly via the Internet and otherwise. Legitimate avenues for the digital distribution of music exist through authorized services, such as Apple's iTunes, Napster, and Rhapsody; many others currently exist or are still emerging.

13.     Plaintiffs have invested and continue to invest substantial sums of money, as well as time, effort, and creative talent, to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, and license sound recordings embodying the performances of their exclusive recording artists. Plaintiffs have invested and continue to invest substantial resources in developing the legitimate market for digital distribution of sound recordings through agreements with digital service providers. Plaintiffs, their recording artists, and others in the music industry are compensated for their creative efforts and monetary investments largely from the sale and distribution of their sound recordings to the public, and from other exploitation of such sound recordings, including authorized online sale and distribution by others and licensed public performances by means of digital audio transmissions.

14.     A non-exhaustive, exemplary list of Plaintiffs' federally copyrighted sound recordings that Defendant infringed is attached hereto as Exhibit A. Each Plaintiff has received Certificates of Copyright Registration from the Registrar of Copyrights for these copyrighted sound recordings.

*Defendant*

15.     Defendant, Usenet.com, Inc., is a Nevada corporation with its principal place of business in Fargo, North Dakota. It operates and profits from the infringing Usenet.com service described below.

## DEFENDANT'S INFRINGING CONDUCT

### *The Usenet Network*

16.     Defendant operates computer servers that form part of the Usenet network and sells to subscribers a service, located at www.usenet.com, that provides access to the Usenet network.  The Usenet network is a set of interconnected servers – operated by numerous different entities – that each hosts the contents of various "newsgroups."  Newsgroups are online bulletin boards dedicated to particular topics or subject matters on which users can post and respond to messages.  Providers of access to newsgroups, such as Defendant, store copies of newsgroup messages on their servers and "synchronize" their servers with the other servers that are part of the Usenet network worldwide.  Synchronized Usenet servers constantly update one another with new messages and receive updates from servers maintained by other entities.  Thus, a message or file posted to and stored on a server operated by one provider that has configured its service in this manner, such as Defendant, is automatically propagated worldwide to Usenet servers operated by other such providers.

17.     The Usenet network has existed for well over two decades.  Originally a medium for public discussion, the network was designed to carry text messages of limited length.  Thus, the Usenet network's original newsgroups were text-based groups devoted to topics such as politics (*e.g.*, "alt.politics.usa.congress").  Although these text-based newsgroups still exist, there are now thousands of so-called "binary" newsgroups.  The binary newsgroups allow users to copy and disseminate large computer files, rather than simply small text messages.  According to Defendant, 99% of the content on the Usenet network is in these binary newsgroups.  Huge numbers of "binary" newsgroups are devoted to the distribution of music, movies, television shows, images, and other non-text files – in most cases copyrighted works being disseminated without authorization.

7

18.    Even a superficial review of the newsgroups in this latter category reveals that they are open and notorious about their purpose and the infringing content that they offer.  These newsgroups (carried by the Defendant) typically have names that leave little doubt as to that purpose, such as alt.binaries.sounds.2000s.mp3, alt.binaries.sounds.1990s.mp3, alt.binaries.sounds.1980s.mp3, alt.binaries.sounds.complete_cd, alt.binaries.sounds.mp3.full_albums, alt.binaries.country.mp3, and alt.binaries.sounds.mp3.rap-hiphop.  Some of these newsgroups have "charters" that explain precisely what is to be posted on and available from the newsgroup and/or include features that allow users to request that specific sound recordings be posted by other users.  *See MP3 Binaries FAQ, available at* http://www.faqs.org/faqs/music/mp3/newsgroups-faq/ (last visited October 5, 2007) (describing the "request" process on binary newsgroups and explaining the types of sound recordings that should be posted in "decade" and "genre" newsgroups) (attached hereto as Exhibit F).  And, on these and other newsgroups, users post copies of copyrighted sound recordings with titles – or "headers" – that openly identify the posting to other users as a sound recording by, for example, specifying the artist name or song or album title, as in "Subject: (<<< www.usenetdevils.com>>> Phil Collins Love Songs by MediaMonky) [05/36] "105 - Phil Collins  - Can't Turn Back The Years.mp3" (01/13)."

*The Defendant's Service*

19.    Many people have access to a subset of Usenet newsgroups through their Internet service providers (ISPs), entities that also provide email and other services.  ISPs typically have chosen not to carry binary newsgroups – such as those mentioned above – that are open and notorious in their offerings of infringing content.  Defendant, in contrast, is one of a group of niche services that sell – for a monthly fee – "unrestricted access" to newsgroups that are not carried by other providers, including many that are openly dedicated to the illegal distribution of

Plaintiffs' copyrighted sound recordings.  Binary newsgroups dedicated to the propagation of

infringing material and offered through Usenet.com number in the hundreds.  At any given

moment, there are millions of obviously copyrighted sound recordings stored on and

disseminated from the binary newsgroups that Defendant has chosen to offer to its customers.

Indeed, according to Defendant, "*billions*" of copies of sound recordings are available for

download each day.  *Usenet Mp3s, available at*

http://www.usenet.com/articles/usenet_mp3s.htm (last visited October 5, 2007) (emphasis

added) (attached hereto as Exhibit G).

      20.    Through its service, Defendant provides to users all of the tools needed to engage

in massive copyright infringement and thus materially contributes to the infringement occurring

over its service.  In operation, it is almost identical to the original Napster and other unlawful

P2P services, but with enhancements that make the service more attractive for users intending to

engage in infringement.  Unlike P2P services, which rely on individual users to store copyrighted

content on their personal computers, Defendant stores the copyrighted sound recordings on its

own high-quality commercial servers to enable users to obtain copies of copyrighted sound

recordings as quickly as possible.   Defendant selects the newsgroups to offer to its subscribers,

making the affirmative decision to carry newsgroups dedicated to infringement.  Defendant

promotes software, including a newsreader program called "News Rover" that facilitates

searching for, uploading, and downloading of files stored across different binary newsgroups, as

well as the burning of CDs and DVDs.

      21.    Like P2P services, Defendant's business model depends on the massive

infringement that it facilitates.   Defendant makes its money by charging users a monthly

subscription fee for access to the newsgroups Usenet.com offers.  Defendant uses the lure of free,

copyrighted sound recordings as a draw to its service, attracting subscribers and thereby earning revenues.

22.    Defendant's profits increase with the amount of infringement that it fosters. Defendant offers "tiers" of service, depending on the volume of files that subscribers download. The greater the amount of material a user wishes to download monthly, the higher the subscription fee.  Binary files – the type of file that must be used to upload and download copyrighted sound recordings – are significantly larger than text files.  The more copyrighted sound recordings users download, the more money Defendant makes.  Indeed, Defendant markets these higher levels of service directly to users seeking free and unrestricted access to sound recordings.  As Defendant advertises, "[t]he number of mp3s you can download depends on your daily download limits, of course, which depend on the type of account you have. Usenet.com, for example, offers an "Unlimited" membership account which *allows members to download all the mp3s they want* without worrying about reaching or exceeding their download limits." *Usenet Mp3s, available at* http://www.usenet.com/articles/usenet_mp3s.htm (emphasis added) (Exhibit G).

### *Defendant's Knowledge and Encouragement of Infringement*

23.    Defendant is well aware that it is hosting and disseminating large amounts of infringing content.  Indeed, Defendant promotes its service to people who "[l]ove [d]ownloading [f]ree [m]p3s" as granting access to the "most comprehensive source of free mp3s, videos, and movies that you find online today." *Free MP3, available at* www.usenet.com/articles/free_mp3.htm (last visited October 5, 2007) (attached hereto as Exhibit H).  Defendant's website advertises that it provides access to the "Internet Underground" where users "*do not have to pay per mp3, so you can virtually download all the files that your heart desires*." *Id.*  Defendant also advertises that its service is comprehensive – providing access to

10

"*billions of mp3s that can be downloaded by anyone with a Usenet account.* Many are added

daily in different music newsgroups so be sure you are checking them on a regular basis, so that

you keep your collection complete. *No other source for mp3s hosts that many music files at*

*one place!*" *Usenet Mp3s, available at* http://www.usenet.com/articles/usenet_mp3s.htm

(emphasis added) (Exhibit G).

      24.     The fact that most of these purportedly "free" mp3s, videos, and movies are not

licensed for free distribution is self-evident. In fact, newsgroups are widely touted – in

numerous publications, Internet postings, and other media – as a great source of infringing

material, one that is superior to P2P services. *See, e.g.*, Thomas Mennecke, "BitTorrent vs.

Usenet," Jan. 9, 2007, *available at* http://www.slyck.com/story1376.html (comparing Usenet

favorably to the BitTorrent P2P service as a piracy tool) (last visited October 5, 2007) (attached

hereto as Exhibit I). Users of newsgroups on Defendant's servers chat regularly and openly

about their ability to infringe copyrights through the Usenet service with minimal chance of

being caught by copyright owners or law enforcement. As one typical poster extols, "It may not

be elegant, but it works, I can download all day long with out worrying about the RIAA

[Recording Industry Association of America]." Post from "Technobarbarian," *Binary*

*newsgroups, and file sharing applications . . .*, alt.music.mp3, Aug. 6, 2004 (last visited

October 8, 2007) (attached hereto as Exhibit J).

      25.     Defendant markets its service as a haven for copyright infringement and targets its

advertising at communities of known copyright infringers. Defendant consciously and blatantly

promotes itself as a replacement for P2P services now that many such services have been shut

down or forced to adopt measures that make it more difficult to exchange infringing material.

Defendant advertises that, with "[f]ile sharing websites . . . getting shut down," the "solution" for

"the Internet user who loves to download stuff for free" is Defendant's service. *Free Download*, *available at* www.usenet.com/articles/free_download.htm (Exhibit C). With the disappearance of several prominent P2P services, Defendant promises that its service "is truly an unparalleled source for free music downloads that cannot be compared to file sharing programs and websites, such as KaZaa or Audiogalaxy," and that "Usenet beats them all by far, judging by the amount of free music downloads it contains and the variety you can expect." *Free Music*, *available at* www.usenet.com/articles/free_music.htm (last visited October 5, 2007) (attached hereto as Exhibit K). Defendant boasts that "[t]oday's hottest way of sharing MP3 files over the Internet is Usenet; forget about all the peer-to-peer software applications, which quickly become outdated. . . . MP3 Newsgroups are the ultimate way of sharing as they are well organized and allow the users to find what they are looking for quickly and effortlessly." *Mp3 Newsgroups*, *available at* http://www.usenet.com/articles/mp3_newsgroups.htm (Exhibit B).

26.      To further attract subscribers through the draw of copyright infringement, Defendant also intentionally designed its service as a haven in which infringement can occur without detection. Defendant claims to have designed its service to ensure "anonymity" so that no one can know what content individual users are copying and disseminating. Defendant markets this feature specifically to users who want to engage in copyright infringement by assuring them that they cannot be identified when they upload or download music (as they can be on P2P services). Defendant specifically compares itself favorably in this respect to file sharing services "such as KaZaa and LimeWire," where people "have been sued recently for downloading or posting music files." *See Usenet Censorship*, *available at* http://www.usenet.com/articles/usenet_censorship.htm (last visited October 5, 2007) (attached hereto as Exhibit L).

27.    Defendant also provides and markets ever-increasing "retention times" for its binary newsgroups – *i.e.*, the amount of time that the infringing files will be retained on the Defendant's system and made available to users.  Longer retention times are tremendously attractive to users who want to use the Usenet network to obtain copyrighted music without paying for it, as it means access to a greater number of copyrighted sound recordings at any given time.  Thus, providers of newsgroup access, such as Defendant, compete on the basis of long retention times to attract those users.  Defendant brags that it "is constantly increasing our retention rates and staying ahead of the competition," explains that in order to increase retention time Defendant dedicates servers to particular newsgroups, including a server that "is just for mp3s," and promises that it offers up to "150 Days Retention."  *Frequently Asked Questions about Usenet and Newsgroups, available at* http://www.usenet.com/faq.htm (last visited October 5, 2007) (attached hereto as Exhibit M); *Newsgroup Retention, available at* http://www.usenet.com/articles/newsgroup_retention.htm (last visited October 8, 2007) (attached hereto as Exhibit N).

28.    By promoting itself as a haven for copyright infringers and marketing itself to communities of infringers with the prospect of access to copyrighted sound recordings for free, Defendant makes the service more attractive to those seeking to commit copyright infringement, thereby perpetuating the massive infringement that Defendant facilitates and ensuring more revenues to Defendant.

### *Defendant's Failure to Take Action To Stop Infringement*

29.    Defendant has the right and ability to supervise and control the infringing activities that occur through the use of the Usenet.com newsgroup service, yet refuses to exercise that right.  Defendant has absolute control over the content on its servers and access to that content.  Defendant can delete postings from the servers that it controls, can cease to offer

13

newsgroups containing obviously infringing content, can filter the content being posted to its

servers with available technology to stop the ongoing copyright infringement, and can terminate

access of subscribers engaged in the uploading and downloading of copyrighted sound

recordings.

30.     Among other things, Defendant can and, when it chooses to do so, does track its

subscribers' uploading and downloading activity.  Defendant manages download limits and has

the technical ability to ascertain the messages posted by its subscribers.  If the subscriber exceeds

his or her subscription, then Usenet.com offers a menu of options to users reflecting

Usenet.com's high level of control over the accounts – including to upgrade to allow more

downloading, to purchase more bandwidth for that month, or to wait for the account to reset.  *See*

*Usenet.com Pricing and Plans, available at* https://signup.usenet.com/signupT2.cfm (last visited

October 5, 2007) (attached hereto as Exhibit O).  Usenet.com also states in its "Privacy Policy"

that it "maintains a log of posts to newsgroups through the Service by each Service user," which

it uses for its "own internal business purposes only."  *Usenet.com Privacy Policy, available at*

www.usenet.com/privacy.htm (last visited October 5, 2007) (attached hereto as Exhibit P).

31.     Defendant Usenet.com expressly retains the right to suspend or terminate a

subscriber's account based on user activity.  *See Usenet.com Code of Conduct, available at*

http://www.usenet.com/code_of_conduct.htm (last visited October 5, 2007) (attached hereto as

Exhibit Q).  Usenet.com's "Copyright Policy" nominally prohibits subscribers from "posting,

distribution, or reproduction in any way any copyrighted material, trademarks, or other

proprietary information without obtaining the prior written consent of the owner of such

proprietary rights."  *Usenet.com Copyright Policy, available at*

http://www.usenet.com/copyright.htm (last visited October 5, 2007) (attached hereto as Exhibit

R). Defendant nonetheless expressly promises its users that it will *not* take action against them for downloading infringing material. Thus Defendant disclaims any intent to take action against repeat infringers who use Usenet.com to download infringing material. *Id.*

32.    Defendant has received repeated notice from copyright owners, including Plaintiffs, of infringements by users, mass infringements through particular newsgroups, and repeat infringements of specific sound recordings. Despite such notices, Defendant continues to carry obviously infringing newsgroups, refuses to remove from its servers all copies of copyrighted sound recordings identified to Defendant through such notices, and continues to market its service as a means to infringe copyrights.

33.    Despite the ability to control the infringement facilitated by its service, Defendant has failed to take sufficient action to stop or minimize the infringement. Defendant has refused to cease carrying obviously infringing newsgroups and has refused to remove from its servers all copies of copyrighted sound recordings identified to Defendant by Plaintiffs. On information and belief, Defendant has failed to take action against users of its service engaged in repeated acts of infringement by uploading and downloading copyrighted works. Defendant has failed to adopt any copyright filtering solutions, despite the ready availability of such technologies.

34.    Defendant's continued hosting and facilitation of blatant copyright infringement, despite having received repeated notice thereof, is unsurprising in light of the Defendant's dependence on infringement as part of its business model. Defendant's business depends on the volume of its subscribers, and on the volume of files that its subscribers upload and download. Defendant directly profits from the reproduction and distribution of sound recordings at the expense of Plaintiffs' copyrights.

15

## CLAIM ONE FOR RELIEF

**(Direct Copyright Infringement – Infringement of Plaintiffs' Distribution Right)**

35.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

36.    Defendant, without the permission or consent of Plaintiffs, and without authority, is distributing Plaintiffs' copyrighted sound recordings to the public by making available for download and disseminating to Usenet.com subscribers copies of those sound recordings housed on Usenet.com's servers, including but not limited to the non-exhaustive list of sound recordings specified in Exhibit A hereto.  Defendant is also distributing those same recordings to the public by distributing copies of Plaintiffs' sound recordings uploaded by Usenet.com subscribers to other Usenet providers that host the same newsgroups, as well as the subscribers of such other services.

37.    Such distribution of permanent copies of sound recordings to Usenet.com subscribers constitutes infringement of Plaintiffs' registered copyrights and the exclusive rights under copyright in violation of 17 U.S.C. § 106(3).

38.    The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

39.    Defendant's acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

40.    As a direct and proximate result of Defendant's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages as well as Defendant's profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount

16

of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

41.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

42.    Defendant's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## CLAIM TWO FOR RELIEF

### (Direct Copyright Infringement – Infringement of Plaintiffs' Reproduction Right)

43.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 42 as if fully set forth herein.

44.    Defendant, without the permission or consent of Plaintiffs, and without authority, is making and causing to be made unauthorized copies of Plaintiffs' copyrighted sound recordings to the public by reproducing and storing copies of such recordings on Usenet.com servers to be further downloaded, accessed, and reproduced by Usenet.com subscribers, including but not limited to the non-exhaustive list of sound recordings specified in Exhibit A hereto.

45.    Such reproduction of copies of sound recordings on Usenet.com servers to be downloaded by Usenet.com subscribers constitutes infringement of Plaintiffs' registered copyrights and the exclusive rights under copyright in violation of 17 U.S.C. § 106(1).

46.    The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

17

47.     Defendant's acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

48.     As a direct and proximate result of Defendant's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages as well as Defendant's profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

49.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

50.     Defendant's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## CLAIM THREE FOR RELIEF

### (Inducement of Copyright Infringement)

51.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

52.     Usenet.com users are creating and distributing unauthorized reproductions of Plaintiffs' copyrighted sound recordings, including but not limited to the non-exhaustive list of copyrighted sound recordings specified in Exhibit A hereto, and therefore are liable for direct copyright infringement of Plaintiffs' exclusive rights of reproduction and distribution under 17 U.S.C. § 106(1) & (3).

18

53.    Defendant is liable under the Copyright Act for inducing the infringing acts of Usenet.com subscribers. Defendant operates and maintains the Usenet.com service with the object of promoting its use to infringe Plaintiffs' copyrights.

54.    Defendant's inducement of copyright is apparent from, among other things: Usenet.com's open attempts to market itself as an alternative to peer-to-peer services for downloading "free" music, movies, and software, thus intentionally trying to attract customers intent on using the service to infringe; Defendant's encouragement of infringement by its users by touting the availability of copyrighted sound recordings on its service; the staggering amount of infringing content available through the binary newsgroups to which Usenet.com provides access; Usenet.com's touting of its service's encryption and anonymity features; Defendant's repeated increases in its message retention time, thereby ensuring that infringing works are accessible for longer periods and in greater variety; Usenet.com's utter failure to take readily available steps to block access to infringing works, for example by declining to carry newsgroups that are obviously dedicated to copyright infringement, failing to remove infringing postings, failing to take action against infringing subscribers, and failing to adopt filtering solutions despite the availability of effective technologies for doing so; and Usenet.com's business model itself, which plainly depends on infringement, as evidenced by among other things the fact that Usenet.com's subscription fees increase based on the quantity of material a user downloads and its encouragement to users that they should pay higher fees to be able to download greater quantities of sound recordings.

55.    The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

56.    Defendant's acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

57.    Through the conduct described above, Defendant is inducing infringement of Plaintiffs' copyrights and exclusive rights under copyright, in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

58.    As a direct and proximate result of Defendant's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages as well as Defendant's profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

59.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

60.    Defendant's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## CLAIM FOUR FOR RELIEF

### (Contributory Copyright Infringement)

61.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 60 as if fully set forth herein.

62.    Usenet.com users are creating and distributing unauthorized reproductions of Plaintiffs' copyrighted sound recordings, including but not limited to the non-exhaustive list of