# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITAL RECORDS, INC.; CAROLINE RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP, INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MAVERICK RECORDING COMPANY; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; WARNER BROS. RECORDS INC.; and ZOMBA RECORDING LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> USENET.COM, INC., <br><br> Defendants. | Civil Action No.  07-CIV-8822(HB) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT USENET.COM, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR ALTERNATIVELY, TO TRANSFER

Of counsel:

Lauren E. Handler
SDNY (LEH 6908)
PORZIO, BROMBERG & NEWMAN,
P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997
(973) 889-4326 (Telephone)
(973) 538-5146 (Facsimile)
lehandler@pbn.com

Charles S. Baker
John R. Hawkins
PORTER & HEDGES, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000 (Telephone)
(713) 228-1331 (Facsimile)
cbaker@porterhedges.com
jhawkins@porterhedges.com
*Attorneys for Defendants*

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ..................................................................................................3

I.  Introduction...........................................................................................................5

II. Factual Background ...............................................................................................6

    A.  The Usenet and Usenet.com ..........................................................................6

    B.  Facts Alleged to Give Rise to this Action......................................................7

    C.  Plaintiffs' Claims Against Usenet.com...........................................................8

    D.  Specially-Appearing Defendant Usenet.com Lack Sufficient Minimum Contacts with New York......................................................................................................9

III. Argument and Authorities....................................................................................11

    A.  Legal Standard for Determining Whether to Exercise Personal Jurisdiction ...................11

    B.  Personal Jurisdiction Is Not Proper Under CPLR § 301....................................11

    C.  Personal Jurisdiction Is Not Proper Under CPLR § 302(a)(1) ..........................13

    D.  Personal Jurisdiction Is Not Proper Under CPLR § 302(a)(3) ..........................16

    E.  In the Interest of Justice, this Court Should Transfer this Case to the District Court of North Dakota ..........................................................................................................19

Conclusion ...............................................................................................................20

1215020v4

## TABLE OF AUTHORITIES

CASE                                                                          PAGE

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999)..............................................................................14

*Bensusan Restaurant Corp., v. King,*
    126 F.3d 25 (2d Cir. 1997).................................................................................11

*Briley v. Blackford,*
    1990 WL 124341 (S.D.N.Y. 1990)....................................................................18

*Citigroup Inc. v. City Holding Co.,*
    97 F. Supp. 2d 549 (S.D.N.Y. 2000).............................................................11,14

*Fantis Foods, Inc. v. Standard Importing,*
    425 N.Y.S.2d 783 (1980)...................................................................................18

*ISI Brands, Inc. v. KCC Int'l, Inc.,*
    458 F. Supp. 2d 81 (E.D.N.Y. 2006) ...........................................................15, 16

*Jazzini v. Nissan Motor Co., Ltd.,*
    148 F.3d 181 (2d Cir. 1998)............................................................................n.1

*K.C.P.L., Inc. v. Nash,*
    1998 WL 823657 (S.D.N.Y. 1998)...................................................................14

*Landoil Resource Corp. v. Alexander & Alexander Servs., Inc.,*
    918 F.2d 1039 (2d Cir. 1990)............................................................................11

*Light v. Taylor,*
    2007 WL 274798 (S.D.N.Y. 2007)...................................................................17

*Medpay Sys., Inc. v. Medpay USA, LLC,*
    2007 WL 1100796 (E.D.N.Y. 2007)............................................................ 12-13

*Rescuecom Corp. v. Hyams,*
    477 F. Supp. 2d 522 (N.D.N.Y. 2006)..............................................................15

*Rosenberg v. PK Graphics,*
    2004 WL 1057621 (S.D.N.Y. 2004)............................................................ 15-16

*Seldon v. Direct Response Techs. Inc.,*
    2004 WL 691222 (S.D.N.Y. 2004)...................................................................15

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000,*
    257 F. Supp. 2d 648 (S.D.N.Y. 2003)..........................................................................19, n.5

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000,*
    2003 WL 1807418 (S.D.N.Y. 2003).................................................................................n.1

*Stephan v. Babysport, LLC,*
    499 F. Supp. 2d 279 (E.D.N.Y. 2007) ........................................................................13, 17

*The Accessory Corp. v. Spotless Plastics Pty. Ltd.,*
    2007 WL 2584963 (S.D.N.Y. 2007)...................................................................................11

*Warner Bros. Entertainment Inc. v. Ideal World Direct,*
    2007 WL 2807757 (S.D.N.Y. 2007).................................................................15, 19, n.1

*Welsh v. Servicemaster Corp.,*
    930 F. Supp. 908 (S.D.N.Y. 1996) ................................................................................. 14

## STATUTES & RULES

28 U.S.C. § 1404 ..............................................................................................5, 19, n.2

28 U.S.C. § 1406 ..............................................................................................5, 19, n.3

28 U.S.C. § 1631 ..............................................................................................5, 19, n.4

FED. R. CIV. P. 12(b)(2).............................................................................................5

N.Y. C.P.L.R. § 301 ....................................................................................10, 12, 13

N.Y. C.P.L.R. § 302 ..................................................................................................10

N.Y. C.P.L.R. § 302(a)(1).................................................................................9, 13, 14, 16

N.Y. C.P.L.R. § 302(a)(3).................................................................................9, 16, 17, 18

1215020v4

Defendant Usenet.com, Inc. ("Usenet.com") files this Memorandum of Law in Support of its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively, to transfer this case in the interest of justice to the District Court of North Dakota pursuant to 28 U.S.C. Sections 1404, 1406, and 1631, and respectfully shows as follows:

## I.    **INTRODUCTION**

Defendant Usenet.com is a Nevada corporation, with its principal and only place of business in Fargo, North Dakota. Usenet.com does not have an office or employees in New York, does not own or lease property in New York, does not have a New York telephone listing or bank account, is not registered to do business in New York, does not direct advertising to or otherwise target New York residents, and is not obligated to pay taxes in New York.

Despite the fact that Usenet.com lacks sufficient contacts with New York to justify this Court's exercise of personal jurisdiction over it, Plaintiffs nevertheless have sued Usenet.com in New York. According to the vague allegations in Plaintiffs' otherwise long-winded Complaint, Usenet.com is purportedly liable for unspecified acts of copyright infringement allegedly performed by its customers, and for its own acts of alleged direct copyright infringement. Plaintiffs' jurisdictional allegations are all centered around Usenet.com's website and/or servers and the alleged level of interaction between New York residents and that website and those servers. Exercising personal jurisdiction over Usenet.com, however, based on its *de minimis* contacts with New York residents via its website and/or use of its servers would not comport with due process. This Court should dismiss this action for lack of personal jurisdiction, or alternatively,

transfer the action to the District Court of North Dakota, where jurisdiction and venue are proper as to Usenet.com.

## II.   FACTUAL BACKGROUND

### A.   THE USENET AND USENET.COM

"The Usenet" is a global, decentralized completely-text based Internet discussion system, established in 1980, that is "owned" by no one, and predates the World Wide Web by a decade. Defendant Usenet.com is one of 250,000-plus conduits for text-based Usenet articles posted by one of thousands of news reader software programs and into the Usenet stream via any one Usenet host around the world, and thus, traveling through the Usenet. Users of the Usenet can read and post text messages, collectively referred to as news, to user-defined categories known as newsgroups. Newsgroups are created by individuals worldwide, and anyone can create a newsgroup. The Usenet does not have a central server or system owner. Instead, the Usenet is distributed among a large conglomeration of servers that temporarily cache and exchange messages to one another. Usenet resembles bulletin board systems (BBS) in most respects, and is the precursor to the various web forums of today. Virtually every Internet service provider ("ISP") in the world offers Usenet. Individual users generally read from and post messages to a local server, and the servers then exchange messages between one another.

When a Usenet.com user posts text-based news articles, it is instantly propagated to other Usenet hubs around the world and vice versa. Each news server communicates with one or more other servers and exchanges news articles with them. In this way, the news article is propagated in basic text format from server to server, eventually reaching every server in the World Wide Usenet network. The Usenet is comprised of a large

number of "newsgroups," 140,000-plus each on an individual topic, which users may access from any ISP or usenet access point in the world. Anyone in the world can create a newsgroup with any name they choose. New newsgroups are added every day on a wide range of topics such as: alt.religion.christian, alt.animals.dogs, rec.pets.dog.health, alt.lawyers, law.court.federal, Microsoft.public.security, Alt.binaries.frog, alt.binaries.long, alt.binaries.latebyte, alt.binaries.eat, and alt.binaries.news-server-comparison. Usenet.com users may access news articles from, and post news articles to, those newsgroups. One does not have to subscribe to any newsgroup to access it, and subscribing has nothing to do with Usenet.com or any other ISP. Subscribing to service providers such as Usenet.com is something that newsreaders do that basically keeps track of what articles they have read.

All types of institutions offer access to Usenet or run their own Usenet hubs, including ISPs such as Earthlink, Time Warner Cable, Pacific Bell, and Southwestern Bell, businesses including publicly-traded companies such as Google, academia, government, individuals, law enforcement, and nonprofit organizations. Moreover, large corporations such as Microsoft make newsreading software that enables people to post binary content to a text-based system by encoding/decoding usenet messages.

**B.    FACTS ALLEGED TO GIVE RISE TO THIS ACTION.**

Plaintiffs initiated this lawsuit on October 12, 2007, by filing a Complaint for Damages and for Declaratory and Injunctive Relief against Defendant Usenet.com, Plaintiffs' claims against Usenet.com are all based on the following conduct alleged in Plaintiffs' Complaint:

> Defendant's service *enables and encourages its customers* to reproduce
> and distribute millions of infringing copies of Plaintiffs' valuable

7

copyrighted sound recordings. Defendant does so by loading online bulletin boards or "newsgroups" obtained from the Usenet network onto its servers. Defendant then sells access to the newsgroups it has chosen to host through its 'Usenet.com' Usenet service. . . . ***Users of Defendant's services*** post copyrighted sound recordings to these newsgroups on Defendant's servers . . . .

Complaint at ¶ 3 (emphasis added).

### C.    PLAINTIFFS' CLAIMS AGAINST USENET.COM

Plaintiffs purport to assert claims against Defendant Usenet.com for direct copyright infringement, inducement of copyright infringement, contributory copyright infringement, and vicarious copyright infringement. Complaint at ¶¶ 35-81. All of Plaintiffs' claims are based on allegedly infringing conduct by Usenet.com's customers and by Usenet.com to the extent Usenet.com's servers facilitate such conduct:

- *Direct Copyright Infringement of Plaintiffs' Distribution Rights* – Usenet.com "is distributing Plaintiffs' copyrighted sound recordings to the public by making available for download and disseminating to Usenet.com subscribers copies of those sound recordings housed on Usenet.com's servers . . . [and] uploaded by Usenet.com subscribers to other Usenet providers [and subscribers]." Complaint at ¶ 36.

- *Direct Copyright Infringement of Plaintiffs' Reproduction Rights* – Usenet.com "is making and causing to be made unauthorized copies of Plaintiffs' copyrighted sound recordings to the public by reproducing and storing copies of such recordings on Usenet.com servers to be further downloaded, accessed, and reproduced by Usenet.com subscribers." Complaint at ¶ 44.

- *Inducement of Copyright Infringement* – Usenet.com "is liable under the Copyright Act for inducing the infringing acts of Usenet.com subscribers. Defendant operates and maintains the Usenet.com service with the object of promoting its use to infringe Plaintiffs' copyrights." Complaint at ¶ 54.

- *Contributory Copyright Infringement* – Usenet.com "causes or otherwise materially contributes to Usenet.com subscribers' copyright infringement . . . ." Complaint at ¶ 64.

- *Vicarious Copyright Infringement* – Usenet.com "has the legal right and

8

actual ability to supervise and control the infringing activities [by newsgroups and subscribers] that occur through the use of the Usenet.com newsgroup service." Complaint at ¶ 74.

In sum, the key allegation consistent throughout Plaintiffs' Complaint is that the computer servers and website managed by Usenet.com are a conduit for direct and secondary infringement.

### D.    SPECIALLY-APPEARING DEFENDANT USENET.COM LACKS SUFFICIENT MINIMUM CONTACTS WITH NEW YORK.

Usenet.com is a Nevada corporation with its principal and only place of business in Fargo, North Dakota. Complaint at ¶ 15; Declaration of Gerald Reynolds (Reynolds Decl.) attached as Exhibit A, at ¶ 2. Plaintiffs are alleged to have either their principal place of business or a place of business in New York. *See* Complaint at ¶ 9. Plaintiffs aver "[o]n information and belief," without a single fact-specific allegation, that this Court has personal jurisdiction over Usenet.com based almost entirely on Usenet.com's website and/or servers:

> **On information and belief,** Defendant **has chosen to direct its infringing activities at New York,** including by entering into contracts and other arrangements with residents of New York and by enabling New York residents to access infringing files through Defendant's newsgroup service. The voluminous acts of direct infringement for which Defendant is liable require a **high level of interaction between users' computers and Defendant's website and/or servers.** Thus, Defendant does continuous and systematic business in New York and is hence present in New York, *see* N.Y. C.P.L.R. § 301, transacts business in New York, and contracts to supply goods and services in New York in connection with the matters giving rise to this suit. *See id.* § 302(a)(1). Defendant also commits infringing acts outside of New York causing injury to Plaintiffs in New York, and Defendant regularly does or solicits business in New York, and/or derives substantial revenue from goods or services rendered in New York, and/or reasonably should expect its infringing conduct to have consequences in New York and derives substantial revenue from interstate commerce. *See id.* § 302(a)(3).

Complaint at ¶ 8 (emphasis added).

9

Usenet.com's website alone is insufficient to confer personal jurisdiction over Usenet.com under either New York Civil Practice Law and Rules ("CPLR") Section 301 or 302. First and foremost, Usenet.com has never "chosen to direct" any activities of any nature at residents of New York. Reynolds Decl. at ¶ 8. Moreover, none of the activities alleged in the Complaint to infringe (*i.e.,* hosting a website and/or servers that infringe or allows others to infringe) occurred in New York, as Usenet.com's servers are located in other states. *Id.* at ¶ 6. Nor does Usenet.com own or lease any property in New York. *Id.* at ¶ 5. Usenet.com does not have an office in New York, nor does it have a New York telephone listing. *Id.* at ¶ 5. Usenet.com does not target any advertising or promotional materials to New York residents. *Id.* at ¶ 8. It has no employees in New York. *Id.* at ¶ 5. Usenet.com is not registered to do business in New York. *Id.* at ¶ 5. It does not maintain a New York bank account, nor is it obligated to pay taxes in New York. *Id.* at ¶ 5. With the exception of this lawsuit, Usenet.com has never been a party to any lawsuit in a New York state or federal court. *Id.* at ¶ 7.

Usenet.com lacks the requisite minimum contacts with New York to support this Court's exercise of personal jurisdiction over it. Accordingly, this Court should dismiss the claims against Usenet.com, or alternatively, in the interests of justice, transfer the action to the District Court of North Dakota.

## III.   ARGUMENT AND AUTHORITIES

### A.   LEGAL STANDARD FOR DETERMINING WHETHER TO EXERCISE PERSONAL JURISDICTION.

Personal jurisdiction in a federal court is determined by the law of the forum state. *See Bensusan Restaurant Corp., v. King*, 126 F.3d 25, 27 (2d Cir. 1997). The initial burden is on Plaintiffs to establish a *prima facie* case for jurisdiction over Usenet.com. *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 563 (S.D.N.Y. 2000). Because the CPLR does not extend personal jurisdiction to the full extent permitted by due process, a two-fold inquiry is required. "First, it must be determined whether New York law permits the exercise of personal jurisdiction over a defendant. Second, if jurisdiction is proper under New York law, it must be determined whether exercising jurisdiction over the defendant comports with due process." *Id.* at 564.

### B.   PERSONAL JURISDICTION IS NOT PROPER UNDER CPLR § 301.

Section 301 of the CPLR provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Under this section, a nonresident defendant is subject to personal jurisdiction in New York "if it has engaged in such a continuous and systematic course of doing business in the state that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Resource Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990). In order for a defendant to be subject to jurisdiction under Section 301, the court "must be able to say from the facts that the corporation is present in the State 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *The Accessory Corp. v. Spotless Plastics Pty. Ltd.*, 2007 WL 2584963 *3 (S.D.N.Y. 2007) (citation omitted). In determining a defendant's presence in the state under Section 301, New York courts

11

generally focus on four factors: "the existence of a New York office; the solicitation of business in New York; the presence of bank accounts and other property in New York; and the presence of employees in New York." *Id.* None of these factors are present here. Specifically,

- The computer servers through which Usenet.com operates are not located in New York. Reynolds Decl. at ¶ 6.

- Usenet.com does not own or lease property in New York. *Id.* at ¶ 5.

- Usenet.com does not have an office in New York. *Id.*

- Usenet.com is not registered to do business in New York. *Id.*

- Usenet.com does not have a New York telephone listing. *Id.*

- Usenet.com does not have any employees in New York. *Id.*

- Usenet.com does not maintain a bank account in New York. *Id.*

- Usenet.com is not obligated to pay taxes in New York. *Id.*

- Usenet.com does not direct any advertising or promotional materials to New York residents. *Id.* at ¶ 8.

- Usenet.com has never been a party to any lawsuit in a New York state or federal court, other than the present one. *Id.* at ¶ 7.

Usenet.com certainly does not solicit or conduct business in New York within the meaning of Section 301. Plaintiffs' Section 301 jurisdictional allegation is essentially that there is "a high level of interaction between users' computers [in New York] and Defendant's website and/or servers." Complaint at ¶ 8. However, "[a] firm does not 'do business' in New York simply because New York citizens can contact the firm through its website, and 'courts have routinely held that the fact that a foreign corporation has an interactive website accessible to New York, without more, is insufficient to confer jurisdiction under [Section] 301.'" *Medpay Sys., Inc. v. Medpay USA, LLC,* 2007 WL

12

1100796 *5 (E.D.N.Y. 2007) (internal citations omitted). "'Were it otherwise, every entity or individual that ran a highly interactive website from anywhere in the world could be sued for any reason in New York.'" *Id.*

Thus, as the court explained in *Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279, 285 (E.D.N.Y. 2007), "where the solicitation of business is asserted in support of a 'doing business' allegation, the foreign corporation's activities must rise to the level of solicitation plus 'some additional activities . . . sufficient to render the corporation amenable to suit.'" (citation omitted). "This 'solicitation-plus' standard is not satisfied merely through sales of a manufacturer's product in New York." *Id.* The defendant "must engage in other activities of substance in the state." *Id.* at 286 (concluding that solicitation via website did not amount to conducting business in manner that was "substantial and continuous" while engaging in other activities in New York).

All of Plaintiffs' allegations against Usenet.com arise out of Usenet.com's operation and maintenance of its website and servers. Plaintiffs cannot satisfy the "solicitation-plus" standard under Section 301 to establish personal jurisdiction over Usenet.com. There is no basis for the Court's exercise of general jurisdiction over Usenet.com under CPLR Section 301.

## C.    PERSONAL JURISDICTION IS NOT PROPER UNDER CPLR § 302(a)(1).

Section 302(a)(1) of the CPLR provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state." This section extends jurisdiction to "any nonresident who has purposely availed [itself] of the privilege of conducting activities within New York and thereby invoked the benefits

13

and protections of its laws." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir. 1999). Section 302 requires "'a strong nexus between the plaintiff's cause of action and the defendant's in state conduct.'" *Citigroup,* 97 F. Supp. 2d at 564 (quoting *Welsh v. Servicemaster Corp.,* 930 F. Supp. 908, 910 (S.D.N.Y. 1996)). In other words, there must be some "'articulable nexus between the business transacted and the [claim].'" *Id.* (citation omitted). New York courts consider the totality of circumstances to determine whether the defendant has engaged in purposeful activity in New York in connection with the matter in controversy." *Id.*

Plaintiffs' allegations relating to jurisdiction under Section 302(a)(1) are premised upon "Defendant's website and/or servers." Complaint at ¶ 8. The essence of the service Usenet.com provides is access to and use of Usenet.com's computer servers. The servers are not located in New York. Reynolds Decl. at ¶ 6.

With respect to the issue of whether a website can support the exercise of personal jurisdiction over a nonresident defendant, "[t]he guiding principle which has emerged from the case law is that whether the exercise of personal jurisdiction is permissible is 'directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet.'" *Citigroup,* 97 F. Supp. 2d at 565 (quoting *K.C.P.L., Inc. v. Nash,* 1998 WL 823657 *4-5 (S.D.N.Y. 1998)).

> At one end are cases where the defendant makes information available on what is essentially a "passive" web site. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as *where it knowingly and repeatedly transmits computer files to customers in other states.* Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which

14

depending on the level and nature of the exchange may be a basis for jurisdiction.

*Id.* at 565 (internal citations omitted) (emphasis added).  Although this sliding scale provides some guidance, "it does not amount to a separate framework for analyzing internet-based jurisdiction, and traditional statutory and constitutional principles remain the touchstone of the inquiry." *Warner Bros. Entertainment Inc. v. Ideal World Direct*, 2007 WL 2807757 * 3 (S.D.N.Y. 2007).

"Courts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users." *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87 (E.D.N.Y. 2006) (citing *Seldon v. Direct Response Techs. Inc.*, 2004 WL 691222 *4 (S.D.N.Y. 2004)); *see also Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522, 530, 531 (N.D.N.Y. 2006) (finding that defendant did not purposefully avail itself of the privilege of conducting activities in New York where there was no showing or allegation that nationally available website specifically targeted New York residents).  In *ISI Brands*, for example, the plaintiff alleged only that the defendant "sells products nationally through an interactive website" and did not allege any other connections to New York.  "While some courts have held that a highly interactive website may give rise to personal jurisdiction where otherwise there would have been none . . . in all such cases, unlike here, the plaintiff first established some further contact with the forum state.'" 458 F. Supp. 2d at 88 (quoting *Rosenberg v. PK Graphics*, 2004 WL 1057621 *1 (S.D.N.Y. 2004)).  Likewise, in *Warner Bros.*, one of the defendant's websites "collected membership fees from customers and provided links to third-party download providers." 2007 WL 2807757 *4.  The plaintiffs, however, failed to allege any specific connection to New York customers, and their generalized allegation that the

15

defendant had "continuing and ongoing business contacts" with New York residents was insufficient to confer jurisdiction under Section 302(a)(1). *Id.*

> Even the existence of an interactive "patently commercial" website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York. It stretches the meaning of "transacting business" to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred.

*ISI Brands*, 458 F. Supp. 2d at 87-88.

Plaintiffs' naked allegations of a "high level of interaction between users' computers and Defendant's website and/or servers" will not support the exercise of personal jurisdiction over Usenet.com. Usenet.com's website does not specifically target New York residents, nor is it alleged to. Reynolds Decl. at ¶ 8; *see* www.usenet.com. In fact, Usenet.com's subscription sales to residents of New York State **only** comprised approximately 3.4% to 4.5% of Usenet.com's total subscriptions for the period 2002 through November 2007, and are currently less than 3.4% of total sales. Reynolds Decl. at ¶ 9. The requisite "strong nexus" between Plaintiffs' claims and Usenet.com's conduct in New York is not present in this case. Consequently, there is no basis for this Court's exercise of personal jurisdiction over Usenet.com under Section 302(a)(1).

### D.    PERSONAL JURISDICTION IS NOT PROPER UNDER CPLR § 302(a)(3).

CPLR Section 302(a)(3) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should

16

reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."

As previously described, Usenet.com does not direct advertising or otherwise target New York residents. Reynolds Decl. at ¶ 8. Nor does Usenet.com derive "substantial revenue" from New York sales. *Id.* at ¶ 9. The *de minimis* amount of revenue Usenet.com obtains from subscriptions to New York residents – less than 3.4% of its total sales – will not support the exercise of personal jurisdiction over Usenet.com under Section 302(a)(3)(i). *See, e.g., Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279, 289 (S.D.N.Y. 2007) (New York sales of 2% insufficient to find personal jurisdiction existed under Section 302(a)(3)(i)).

In order to establish personal jurisdiction over Usenet.com under Section 302(a)(3)(ii), Plaintiffs must show two things: first, although the tort was committed outside the state, that Usenet.com caused them a foreseeable injury in New York; and second, that Usenet.com derives substantial revenue from interstate commerce. *Light v. Taylor*, 2007 WL 274798 *4 (S.D.N.Y. 2007). Plaintiffs' naked allegation that Usenet.com "reasonably should expect its infringing conduct to have consequences in New York," Complaint at ¶ 8, falls woefully short of satisfying Plaintiffs' burden to show that Usenet.com caused them a foreseeable injury in New York.

As previously described, the gist of Plaintiffs' copyright claims against Usenet.com are premised on alleged infringement ***by Usenet.com's customers*** via Usenet.com's website and/or servers, and by Usenet.com enabling downloading Plaintiffs' copyrighted works via its servers. Since the alleged acts of infringement all occurred outside of New York, in order for jurisdiction to be proper under Section

302(a)(3)(ii), the location of Plaintiffs' purported injuries "must be a direct and reasonably foreseeable result of defendants' wrongful acts outside the forum." *Briley v. Blackford*, 1990 WL 124341 *9 (S.D.N.Y. 1990) (citing cases).

> When the injury suffered by a plaintiff resulting from the commercial tort is suffered within the forum, but would have occurred wherever the plaintiff was domiciled or chose to travel, the injury cannot be said to be within the forum so as to justify personal jurisdiction over the defendant.

*Id.*; *see Fantis Foods, Inc. v. Standard Importing*, 425 N.Y.S.2d 783, 787 (1980) (stating that it has "long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the state and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there."). "It would unfairly burden nonresidents if the attenuated consequences of their tortious acts outside a distant forum were to give rise to jurisdiction in that forum." *Briley*, 1990 WL 124341 *9. The Plaintiffs would have suffered the injuries alleged wherever they were located such that Usenet.com should not reasonably have expected its actions and that of its customers to have consequences specifically in New York within the meaning of Section 302(a)(3)(ii). Any alleged infringement occurring outside of New York is remote from the alleged injuries suffered by the Plaintiffs in New York, and exercising personal jurisdiction over Usenet.com based on these attenuated circumstances would not comport with due process.

Moreover, Plaintiffs do not allege any specific facts to support personal jurisdiction. Rather, Plaintiffs' jurisdictional allegations are merely reiterations of the language of Sections 301 and 302. Consequently, Plaintiffs have likewise failed to establish a *prima facie* case for jurisdiction over Usenet.com under Section 302(a)(3)(ii).

18

1215020v4

*See Warner Bros.*, 2007 WL 2807757 *4 (finding generalized allegations insufficient to establish jurisdiction).[1]

**E.    IN THE INTEREST OF JUSTICE, THIS COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT COURT OF NORTH DAKOTA.**

In *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 257 F. Supp. 2d 648, 650 (S.D.N.Y. 2003), the court noted that under 28 U.S.C. §§ 1404,[2] 1406,[3] and 1631,[4] district courts are authorized to transfer actions under certain circumstances.[5]

---

[1] In *Warner Bros.*, the court concluded that because "Plaintiffs' jurisdictional averments are generalized," further discovery was not warranted.    2007 WL 2807757 *4 (citing *Jazzini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) ("affirming dismissal and denying further discovery where plaintiff made only 'conclusory non-fact-specific jurisdictional allegations'")); *see also In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 2003 WL 1807418 *6 (S.D.N.Y. 2003) ("Having failed to meet their limited burden of establishing a prima facie case for this Court's exercise of personal jurisdiction, plaintiffs are not entitled to discovery.").

[2] 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[3] 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[4] 28 U.S.C. § 1631 provides that that "[w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."

[5] As the court noted in *Ski Train*, "[i]t is not entirely clear whether section 1631 or section 1404(a) apply in cases where personal jurisdiction is lacking.  Over forty years ago, the Supreme Court held that a district court lacking both personal jurisdiction and proper venue could nonetheless transfer the action under section 1406(a) to a district where the defects would be cured.  Some courts have expanded that rule, holding that whether or not venue was proper, lack of personal jurisdiction could be remedied by transfer, under either section 1404(a) or section 1406(a) to a district in which personal jurisdiction could be exercised." 257 F. Supp. 2d at n.28.  In either case, the inquiry is the same.

1215020v4

"However, only one inquiry is necessary: whether the 'interests of justice' require transfer or dismissal." *Id.* "'Normally transfer will be in the interest of justice because [] dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Id.* (citations omitted).

This Court lacks personal jurisdiction over Usenet.com. Although dismissal of this action is warranted, in the interest of justice, this Court should transfer this action to the District Court of North Dakota, where personal jurisdiction and venue are proper as to Usenet.com.

## IV.    **CONCLUSION**

This Court's exercise of personal jurisdiction over Usenet.com is not proper under CPLR Sections 301 and 302, and to subject Usenet.com to jurisdiction in New York would violate traditional notions of due process. Accordingly, this Court should dismiss this action, or alternatively, in the interests of justice, transfer this action to the District Court of North Dakota.

Dated: December 5, 2007

Respectfully submitted,

Of counsel:

_____/s/_____

Charles S. Baker

Lauren E. Handler                    John R. Hawkins
SDNY (LEH 6908)                      PORTER & HEDGES, LLP
PORZIO, BROMBERG & NEWMAN,           1000 Main Street, 36th Floor
P.C.                                 Houston, Texas  77002
100 Southgate Parkway                (713) 226-6000 (Telephone)
P.O. Box 1997                        (713) 228-1331 (Facsimile)
Morristown, NJ  07962-1997           cbaker@porterhedges.com
(973) 889-4326 (Telephone)           jhawkins@porterhedges.com
(973) 538-5146 (Facsimile)           *Attorneys for Defendants*
lehandler@pbn.com


## CERTIFICATE OF SERVICE

This is to certify that the foregoing pleading was filed by means of the Court's ECF system on December 5, 2007.  Accordingly, it is assumed that all counsel of record received notice of this filing from the ECF system.  Lead counsel, listed below, will also receive a courtesy copy via email.

_____/s/_____

Charles S. Baker

TO:

Andrew H. Bart
Iris E. Bennett
Luke C. Platzer
JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005

Kenneth L. Doroshow
Karyn A. Temple
RECORDING INDUSTRY ASSOCIATION OF AMERICA
1025 F Street, NW
10th Floor
Washington, DC  20004

21

1215020v4