UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITAL RECORDS, INC.; CAROLINE RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP, INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MAVERICK RECORDING COMPANY; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; WARNER BROS. RECORDS INC.; and ZOMBA RECORDING LLC,<br><br>  Plaintiffs,<br><br>vs.<br><br>USENET.COM, INC.,<br><br>  Defendant. | Civil Action No.  07-CIV-8822(HB) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO STRIKE OR, IN THE ALTERNATIVE,
TO DISMISS DEFENDANT'S COUNTERCLAIMS**

Of counsel:

Lauren E. Handler
SDNY (LEH 6908)
PORZIO, BROMBERG & NEWMAN, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ  07962-1997
(973) 889-4326 (Telephone)
(973) 538-5146 (Facsimile)
lehandler@pbn.com

Charles S. Baker
John R. Hawkins
PORTER & HEDGES, LLP
1000 Main Street, 36th Floor
Houston, Texas  77002
(713) 226-6000 (Telephone)
(713) 228-1331 (Facsimile)
cbaker@porterhedges.com
jhawkins@porterhedges.com
*Attorneys for Defendant*

1144784v6

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 2

    A. Distribution ........................................................................................................... 3

    B. Posting ................................................................................................................... 3

    C. Access .................................................................................................................... 5

    D. Plaintiffs' Improper Activities Before Suit Was Filed .......................................... 5

III. ARGUMENT AND AUTHORITIES .............................................................................. 7

    A. Standard of Review ............................................................................................... 7

        1. Rule 12(f) Standard ................................................................................... 7

        2. Rule 12(b)(6) Standard .............................................................................. 7

    B. Defendant's Counterclaims Should Not Be Dismissed or Stricken Because They Serve A Useful Purpose .................................................................................................... 8

    C. Exercise of Jurisdiction Over Declaratory Judgment is Appropriate .................. 11

IV. CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ................................................................................8

*Dow Jones & Co., Inc. v. Harrods Ltd.,* 346 F.3d 357, 359-60 (2d Cir. 2003) .............................11

*Ellison v. Robertson*, 357 F.3d 1072, 1074 n.1 (9th Cir. 2004) ..................................................2, 4

*Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 155 (S.D.N.Y. 2003) ...............7

*Interscope Records v. Kimmel,* No. 07-CV-0108, 2007 WL 1756383 at *2 (N.D.N.Y. June 18, 2007) .......................................................................................................................................8, 10

*Gregory v. Daly,* 243 F.3d 687, 291 (2d Cir. 2001) .......................................................................7

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 495 n.1 (E.D. Pa. 2006) ..........................................2

*Quanta Specialty lines Insurance Co. v. Investors Capital Corp.*, 2008 WL 1910503 (S.D.N.Y. 2008) ................................................................................................................................................7

*Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *4 (N.D.Cal. May 13, 2008) ................................................................................................................................................9

*Veoh Networks, Inc. v. UMG Recordings, In*c., 522 F.Supp.2d at 1265 .................................12, 13

*Vernor v. Autodesk, Inc.*, 2008 WL 2199682 *3 (W.D. Wash. May 20, 2008) ............................10

**Rules**

Federal Rule 12(b)(6) .......................................................................................................................7
Federal Rule of Civil Procedure 12(f) .............................................................................................7

**Other**

Digital Millennium Copyright Act, 17 U.S.C. § 512 .......................................................................1

Internet Engineering Task Force Request for Comments*,* available at http://ietf.org/rfc.html .......2

Usenet.com Terms of Use, available at http://www.usenet.com/disclaimer.htm ............................4

Defendant Usenet.com, Inc. ("Usenet.com") files this Response in Opposition to Plaintiffs' Motion to Strike or, In the Alternative, to Dismiss Defendant's Counterclaims ("Plaintiffs' Motion") and would respectfully show the Court as follows:

## I.    INTRODUCTION

Plaintiffs, which own or control almost all popular music in the world, claim that Defendant Usenet.com, Inc. ("Usenet.com") is directly and secondarily liable for infringement of certain of Plaintiffs' copyrighted sound recordings. Although Plaintiffs pointedly reference peer-to-peer ("P2P") file sharing and other "illicit internet-based services," *see* Complaint at ¶ 1, the USENET is not a P2P service. As explained *infra*, the USENET protocol allows users to post and access messages through a hierarchical system that pre-dates even the World Wide Web. Usenet.com simply provides its users with access to this global community.

Usenet.com filed its Answer on May 8, 2008, asserting affirmative defenses and requesting (1) a declaratory judgment of non-infringement of Plaintiffs' copyrights; and (2) declaratory judgments under the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA") regarding Usenet.com's compliance with the DMCA, as well as Plaintiffs' noncompliance with the applicable DMCA notice provision. The DMCA provides a "safe harbor" for internet service providers like Usenet.com that, when certain statutory requirements are met, discharges liability for all forms of alleged copyright infringement. Usenet.com's declaratory judgment counterclaims seek a declaration that Usenet.com complied with the DMCA after it received "take-down" notices from the Plaintiffs in the Summer of 2007.

Plaintiffs move to strike or dismiss Usenet.com's declaratory judgment counterclaims. Dismissal is not warranted, as Usenet.com's counterclaims for declaratory judgments concerning compliance with the statutory requirements of the DMCA are not redundant or duplicative of its affirmative defenses under the DMCA. Even in the unlikely event that Plaintiffs withdrew their

1144784v6

claims of infringement, a very real case or controversy would still exist. Moreover, Usenet.com's counterclaim of non-infringement serves a useful purpose: it would entitle it to recovery of its attorneys' fees under the Copyright Act if it prevails. As such, the Court should invoke its discretion to exercise jurisdiction over these counterclaims.

## II.   FACTUAL BACKGROUND

### A.   The USENET System[1]

Usenet.com offers access to the USENET system, allowing users to connect to and use the USENET. Although Usenet.com operates under a similar trade name, the term "USENET" refers to an internet protocol that predates the World Wide Web, dating back to approximately 1980.[2] The USENET has been described as follows:

> [A] worldwide community of electronic BBSs [bulletin board services] that is closely associated with the Internet and with the Internet community. The messages in Usenet are organized into thousands of topical groups, or "Newsgroups" . . . . As a Usenet user, you read and contribute ("post") to your local Usenet site. Each Usenet site distributes its users' postings to other Usenet sites based on various implicit and explicit configuration settings, and in turn receives postings from other sites. Usenet traffic typically consists of as much as 30 to 50 Mbytes of messages per day. Usenet is read and contributed to on a daily basis by a total population of millions of people.

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 495 n.1 (E.D. Pa. 2006). USENET refers to a "user network," or "an international collection of organizations and individuals (known as 'peers') whose computers connect to one another and exchange messages posted by USENET users." *Ellison v. Robertson*, 357 F.3d 1072, 1074 n.1 (9th Cir. 2004). The USENET differs from the World Wide Web model, in part because the USENET system was designed to disperse control

---

[1] While the following information is not outcome determinative Usenet,com believes it is important for the Court to understand how USENET works.

[2] The current technical standards for the USENET can be found at the Request for Comments ("RFC") numbers 3977, Network News Transfer Protocol (NNTP) (2006), and 1036, Standard for Interchange of USENET Messages (1987), each issued by the Internet Engineering Task Force ("IETF"). *See Internet Engineering Task Force Request for Comments, available at* http://ietf.org/rfc.html (last visited January 14, 2008). The IETF is the primary organization responsible for setting standards and maintaining protocols for the Internet. All USENET operators, including Usenet.com, must follow these protocols.

of the network among numerous servers, resulting in enhanced reliability. Today, there are three important differences between the USENET system and the World Wide Web: the distribution of content over the USENET, the posting of messages to the USENET, and the access of messages from the USENET.

Unlike web pages, USENET messages are not centrally distributed by a master server. The USENET is distributed among a large, constantly changing collection of servers, creating a multi-node system without a central server or central system owner. There are thousands and thousands of different USENET servers, each of which is connected to hundreds of other USENET servers. The connections among the USENET servers form a variable mesh through which messages are distributed. No one host is dependent on any other, because each host will typically have connections with many other USENET hosts.

Individual users read and post messages using a local server with USENET access. The local server has connections with other USENET hosts, which exchange messages between one another. When a message is received by a local USENET server, that server forwards the message to all of its USENET connections. A copy of the message is stored on each of the USENET servers, allowing individual users to access and read the message. Because each USENET host will have different connections, a posted message will eventually be distributed to each of the thousands of USENET hosts. This highly-redundant, interconnected system operates to distribute copies of a message throughout the USENET. Consequently, no USENET host/server, including Defendant's, has control over the operation of the network or the distribution of posted content.

The USENET is organized into topical newsgroups, which are online forums for users to discuss, read about, or post messages on a particular subject. *See Ellison*, 357 F.3d at 1074 n.2. A USENET message can be posted to one or more of these newsgroups. Each newsgroup

includes a hierarchy of subjects, for example, sci.math and sci.physics are within the sci.* hierarchy for science topics. There are nine major worldwide hierarchies, eight of which operate under consensual guidelines that govern the administration and naming of newsgroups within the hierarchy. These "Big Eight" hierarchies include comp.* for computer-related discussions; humanities.* for fine arts, literature, and philosophies; news.* for Usenet news; rec.* for recreation and entertainment; sci.* for science related discussions; soc.* for social discussions; talk.* for various controversial topics; and misc.* for miscellaneous topics. The final hierarchy, the alt.* hierarchy, has no centralized control, and anyone who is technically capable of creating a newsgroup may do so within this hierarchy.[3]

Posting content to the USENET differs from uploading content to the World Wide Web. Web servers require a user to upload content through a single point of entry that is controlled by the Web site's server. USENET messages, in contrast, may be posted onto any USENET host for distribution throughout the USENET system. There is no central server for posts on the USENET. As previously explained, the USENET is distributed among a large, constantly changing group of servers which store and forward messages to one another. The user-controlled design of the USENET enables anyone with access rights to a single USENET host to post a message to the entire USENET system. Once the user has posted the message to a single USENET host, the message will be automatically distributed to each of the other USENET servers. Thus, content on the USENET is created and controlled by the users of the system.

Defendant Usenet.com has a long-standing policy against the use of its system to upload unauthorized or inappropriate content. *See* Usenet.com Terms of Use, available at http://www.usenet.com/disclaimer.htm (last visited January 14, 2008). Usenet.com enforces this policy by means including the termination of a user's access rights to the USENET servers.

---

[3] The name alt.* has been said to refer humorously to "anarchists, lunatics, and terrorists," but most people interpret the name as an abbreviation of "alternative."

4

However, Usenet.com has no ability to pre-determine what other, non-Usenet.com users are posting to the USENET system. USENET protocol will result in the automatic distribution of content posted by the other thousands of USENET hosts, and these messages will eventually be copied to Usenet.com servers. The content stored on Usenet.com servers is therefore entirely controlled by third-party users of the USENET system.

Finally, the USENET system differs from the World Wide Web in the access of messages from the USENET. USENET messages are read through the use of a reading device known as a newsreader. Any newsreader that meets the minimal compatibility requirements imposed by the USENET protocol[4] may be used on any USENET host.

Importantly, however, the USENET system is a purely text-based network. A USENET host cannot store or transmit binary[5] content in its raw form. As a result, newsreader programs have been designed to convert binary content into ASCII text that can be posted and transmitted over the USENET. The USENET distributes these converted files over the network using text-only protocols and delivers the text-only version to USENET hosts. In order for a user to access and "read" this content, the user must re-convert the text file back into a binary. While these messages are on the USENET, however, they are not accessible as binaries, but rather as unreadable ASCII text files.

**B.     Plaintiffs' Improper Activities Before Suit Was Filed**

As noted previously, Usenet.com believes that it has fully complied with its obligations under the DMCA, which generally require a service provider like Usenet.com to "take-down" alleged infringing content after it receives appropriate notice from a content owner that its content is accessible on that provider's network. If the notice complies with the DMCA, then the

---

[4] *See supra* note 2.
[5] *See supra* note 5.

5

DMCA requires the service provider to block access to that material to the best of its ability. If the service provider complies, it is absolved from monetary liability for charges of infringement.

Prior to May 2007, Plaintiffs had emailed DMCA notices to Usenet.com in electronic form that included sufficient information to allow Usenet.com to determine if it was one of their customers or not. After receiving these notices, Usenet.com promptly complied with the DMCA in restricting subscriber access to those articles. In May 2007, Plaintiffs emailed a DMCA notice to Usenet.com that did not contain the same electronic information as in the past, but instead contained just a list of artist names, newsgroups, poster's ID, the subject, and message IDs in electronic format. While the lack of full headers hindered Usenet.com's ability to comply with the take-down notice, it was able to essentially block access to these articles by pulling the message IDs and put them on cancel scripts so that they would cancel *if* they happened to be present on Usenet.com's servers.

In July 2007, Plaintiffs mailed paper DMCA notices to Usenet.com for the first time. Again, these notices did not contain full headers. This information was not in electronic form, but instead was contained in a large stack of over 1500 pages of paper in a manner that wholly prevented Usenet.com from taking any action towards blocking access to these articles. Due to the format in which Plaintiffs sent the July 2007 DMCA notices, Usenet.com was unable to extract the message IDs that were necessary to cancel the articles *if* they were present on its servers. Plaintiffs' failure to provide full headers also prevented Usenet.com from verifying whether the alleged infringers were even subscribers of its services. Usenet.com notified Plaintiffs of this fact and asked that they send the information in electronic format as they had previously done. Plaintiff did not respond to that request. On August 6, 2007, Plaintiffs sent another take-down notice. This time, however, the Plaintiffs demanded that Usenet.com block access to seventy-three newsgroups, a position that Usenet.com believed and continues to believe

6

is in violation of the DMCA. Defendant's counsel contacted Plaintiffs and ask once again that the Plaintiffs provide message ID numbers in electronic format, as they had done in the past. As before, Plaintiffs failed to respond. Shortly thereafter, Plaintiffs filed this lawsuit.

## II. ARGUMENT AND AUTHORITIES

**A.     Standard of Review**

   **1.     Rule 12(f) Standard**

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading … any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Courts should not tamper with pleadings absent a strong justification for so doing. *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 2008 WL 1910503 *4 (S.D.N.Y. 2008)). Motions to strike are "generally disfavored." *See id.* In fact, unless the counterclaims can have no possible bearing on the subject matter of the litigation, motions to strike should be denied. *Emmpresa Cubana Del Tabaco*, 213 F.R.D. 151, 155 (S.D.N.Y. 2003)

   **2.     Rule 12(b)(6) Standard**

When determining whether to dismiss a claim under Federal Rule 12(b)(6), a court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Gregory v. Daly,* 243 F.3d 687, 291 (2d Cir. 2001) Similarly, when considering a plaintiff's motion to dismiss a defendant's counterclaim for failure to state a claim, a court "must accept the material facts alleged in the counterclaim as true and construe all reasonable inferences in favor of defendant." *Quanta,* 2008 WL 1910503 at *3 (S.D.N.Y. 2008). The issue is whether the claimant is entitled to offer evidence to support the claims, not whether the claimant will ultimately prevail at trial. *See id.* A party's counterclaim should not be dismissed "unless it appears beyond doubt that the [movant] can prove no set of facts in support of his

7

claim which would entitle him to relief." *Id*. (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

B.  **Defendant's Counterclaims Should Not Be Dismissed or Stricken Because They Serve A Useful Purpose**

Plaintiffs cite numerous nonbinding, distinguishable cases to support their position that Usenet.com's counterclaims should be stricken or dismissed because they restate issues already before the Court, either as part of Plaintiffs' affirmative case, or because they are already presented by way of affirmative defenses. First and foremost, Plaintiffs are wrong when they state that a "mirror-image" counterclaim can never survive attack because such counterclaims are never useful. In fact, the case that Plaintiffs rely upon for this misconstruction of the law, *Interscope Records v. Kimmel*, states that "[w]hether such a declaratory judgment should be entertained depends on the facts and circumstances of the individual case. No. 07-CV-0108, 2007 WL 1756383 at *2 (N.D.N.Y. June 18, 2007).[6] Instead, courts are required to first determine whether the counterclaims serve any useful purpose. If so, the counterclaim should remain in the case even if it is duplicative or redundant of the claims in the complaint or any affirmative defenses that have been pled.

Plaintiffs first attack Usenet.com's DMCA counterclaims, alleging that they are duplicative of Usenet.com's Twenty-Third and Twenty-Fourth Affirmative Defenses and thus, should be stricken (Plaintiffs wisely do not assert that the DMCA counterclaims are part of Plaintiffs' affirmative case as they are not. To the contrary, Plaintiffs' Complaint fails to even mention the DMCA). Plaintiffs rely on two cases from district courts in California and

---

[6] Although the Court in Interscope decided to dismiss the non-infringement counterclaim, it did so after it determined that if the Plaintiffs was to withdraw their claims then there was no continuing threat over the Defendant because the Defendant, an individual accused of copyright infringement, was not in the business of distributing music, unlike the present case.

8

Minnesota, and a 1943 trademark case out of this district, for the proposition that courts strongly favor dismissal or striking Usenet.com's counterclaims.

Even Plaintiffs' lead case, *Stickrath*, states that merely because a declaratory judgment counterclaim concerns matters contained in an affirmative defense does not mean that it is automatically subject to dismissal. No. C07-1941 TEH, 2008 WL 2050990, at *4 (N.D.Cal. May 13, 2008). Instead, a court should focus on whether the counterclaim "serves any useful purpose, and should dismiss or strike a redundant counterclaim only when 'it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim.'" *Id. Id.* at *4.

In *Stickrath,* the court noted that in the context of patent and trademark cases, counterclaims of invalidity are generally allowed to proceed because the defendant has something to gain from a counterclaim declaration of invalidity – it can go on to develop its products without fear of infringement claims. *Id*. at *4. The *Stickrath* court also noted that if a counterclaim seeks "different relief" than the complaint, then this would support a finding that the counterclaim should not be dismissed. The court concluded that "[t]he safer course for the court to follow" is to deny the request to dismiss the counterclaim "unless there is no doubt that it will be rendered moot by the adjudication of the main action." *Stickrath*, 2008 WL 2050990 at *5.

The counterclaims in this action are not factually or legally identical to the issues raised in Plaintiffs' Complaint. Importantly, the counterclaims serve a useful purpose. Usenet.com's DMCA counterclaims seek different relief than that sought in the Complaint and affirmative defenses. Usenet.com's DMCA counterclaims serve the important purpose of final resolution of the ongoing infringement controversy between the parties that will not end if Usenet.com's counterclaims are dismissed and Plaintiffs subsequently dismiss their infringement claims.

9

Without a resolution of Usenet.com's counterclaims, Usenet.com will forever be subject to Plaintiffs' continued threats and inconsistent DMCA notices that waste valuable resources and interfere with Usenet.com's ability to run its business.

With respect to the non-infringement counterclaim, Plaintiffs rely heavily on the case of *Interscope v. Kimmel* for the proposition that courts have readily dismissed non-infringement counterclaims in copyright infringement cases. Even the *Kimmel* court recognized, however, that it is only appropriate to dismiss non-infringement counterclaims if, after Plaintiffs were to withdraw their claims, there would be no continuing threat "lingering" over Defendant's head. Indeed, the only reason that *Kimmel* court dismissed the non-infringement counterclaim was because it determined that the defendant there would not suffer a lingering threat because the defendant, an individual, was not in the business of distributing music, and thus, the case did not involve claims of ongoing infringement. *Kimmel* 2007 WL 1756383 at *4. Unlike *Kimmel*, if the Plaintiffs in the present case were to dismiss or withdraw their infringement claims, the threat of litigation would remain because Usenet.com allows users access to all sorts of content through the USENET network and thus, will continue to remain subject to claims of ongoing infringement. Clearly, if Plaintiffs dismiss their claims of infringement, a very real case and controversy would continue to exist because: (1) there was no judgment on the merits; and (2) Plaintiffs can continue to send Usenet.com inadequate DMCA notices and threaten it with litigation irrespective of Usenet.com's attempts to comply in good faith, which it believes it has done under the DMCA (and thus absolving it of any liability for charges of infringement). *See generally, Vernor v. Autodesk, Inc.*, 2008 WL 2199682 *3 (W.D. Wash. May 20, 2008) (defendant's fear that plaintiff would continue to threaten him with litigation and continually interrupt his business with DMCA notices was a controversy of sufficient immediacy such that the declaratory judgment claim was proper).

In addition, because the non-infringement counterclaim entitles Usenet.com to recover its costs and attorneys' fees if it is determined that it is a non-infringer, the counterclaim is not identical to the factual and legal issues between the counterclaim and the Complaint, and thus serves another useful purpose. While Plaintiffs seek a finding of liability as well as a recovery of damages, costs, and attorneys' fees, Usenet.com – through its counterclaim – also seeks a finding of non-liability as well as recovery of its attorneys' fees as a prevailing party. If Plaintiffs dismiss their case, Usenet.com will be deemed to be a prevailing party. However, if the non-infringement counterclaim is stricken or dismissed, a possibility exists that Plaintiffs will take the position that Usenet.com has no right to recover its attorneys' fees because that issue is not before the Court. Inclusion of this counterclaim would prevent this from occurring and thus serves a useful purpose.

## C.     Exercise of Jurisdiction Over Declaratory Judgment is Appropriate

There are five factors a court must consider in determining whether to exercise jurisdiction over a declaratory judgment action: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy. *Dow Jones & Co., Inc. v. Harrods Ltd.,* 346 F.3d 357, 359-60 (2d Cir. 2003).

A judgment regarding Usenet.com's compliance, or Plaintiffs' noncompliance, with the DMCA and Copyright Act would serve a useful purpose in clarifying or settling the legal issues involved and would offer a sense of finality. Plaintiffs' causes of action do not require them to demonstrate that their conduct complied with the notice provisions of the DMCA, nor are they

11

obligated to demonstrate that Usenet.com's conduct failed to meet the safe harbor provisions of the DMCA. As to the second factor, clearly a judgment as to whether the parties complied with the DMCA would end the controversy and offer relief from future uncertainty. As to the third factor, this is clearly not a case of "procedural fencing" such as where a plaintiff files a premature declaratory judgment action in the hopes of maintaining an advantage as a plaintiff in a more favorable forum. Nor is the issue of whether a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court implicated in this case. Finally, there is not a better or more effective remedy than declaring Usenet.com's compliance, or Plaintiffs' noncompliance, with the relevant provisions of the DMCA and Copyright Act. If Usenet.com prevails on its declaratory judgment counterclaims, the entire case will be effectively and efficiently resolved. Litigating these counterclaims will not cause a lengthier trial or waste judicial resources. If anything, it will streamline the process and possibly allow for a quicker resolution of the case.

Finally, Plaintiffs rely on *Veoh Networks, Inc. v. UMG Recordings, Inc.*, to support their assertion that the Court should decline to exercise jurisdiction over Usenet.com's counterclaims because they should be treated as affirmative defenses. 522 F. Supp.2d at 1265. The facts in the present case differ drastically from those in *Veoh Networks,* in which the plaintiff filed an action seeking declaration of non-infringement of music publisher's copyrights and entitlement to the safe harbor provisions of the DMCA, without providing any information on the specific copyrights that were being infringed. *See id*. The court held that the controversy was not adequately defined because the general allegations did not reference any specific copyright and any opinion on the declaratory action under the DMCA would be advisory, and thus refused to exercise its jurisdiction over those claims. *Id*. at 1269. To the contrary, any opinions on Usenet.com,'s declaratory judgment action under the DMCA or on issues of non-infringement

12

would not be advisory in nature because it involves specific copyrights that have been identified, and would resolve a substantial and clearly defined controversy regarding the parties' compliance with the DMCA and the Copyright Act.

Additionally, in *Veoh*, the plaintiff, by failing to oppose Defendant's arguments, essentially conceded that the court had the power to dismiss the claim. The court did not consider the fact that in the patent arena, declaratory judgment counterclaims of affirmative defenses such as invalidity are almost always allowed. In fact it appears that the *Veoh* court was swayed by the plaintiffs' inappropriate actions in filing a pre-emptive strike lawsuit while the parties were in settlement negotiations.

### III.  CONCLUSION

For these reasons, Plaintiffs' Motion to Dismiss should be denied and Defendant Usenet.com, Inc.'s counterclaims for declaratory judgments should stand. Defendant's counterclaims are not duplicative of its affirmative defenses because they state an actual case or controversy, and the exercise of the Court's jurisdiction over Defendant's declaratory actions is appropriate. In the alternative, Defendant Usenet.com, Inc. respectfully requests that it be allowed leave of court to amend its pleadings to cure any deficiency or to plead with greater

Respectfully submitted,

By:   /s/ Charles S. Baker
      Charles S. Baker
      1000 Main Street, 36th Floor
      Houston, Texas 77002
      Telephone: (713) 226-6000
      Facsimile: (713) 228-1331
      Email: cbaker@porterhedges.com

*ATTORNEY-IN-CHARGE FOR DEFENDANT USENET.COM, INC.*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing was served upon Defendant's counsel by the Court's Electronic Filing System and/or by First Class United States Mail, on this 25th day of June, 2008, addressed as follows:

| | |
|---|---|
| Steven B. Fabrizio | Kenneth L. Doroshow |
| Luke C. Platzer | Karyn A. Temple |
| Jenner & Block LLP | Recording Industry Association of America |
| 1099 New York Avenue, NW, Ste. 900 | 1025 F Street, NW, 10th Floor |
| Washington, DC 20001-4412 | Washington, DC 20004 |
| Telephone: 202.639.6000 | Telephone: (202) 775-0101 |
| Facsimile: 202.639.6066 | Facsimile: (202) 775-7253 |
| Email: sfabrizio@jenner.com | Email: KDoroshow@RIAA.Com |
|        lplatzer@jenner.com | |

Gianni P. Servodidio
Jenner & Block LLP
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone: 212.891.1620
Facsimile: 212.891.1699
Email: gps@jenner.com

                                                       /s/ Charles S. Baker
                                                       Charles S. Baker