UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, INC.; CAROLINE RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MAVERICK RECORDING COMPANY; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; WARNER BROS. RECORDS INC.; and ZOMBA RECORDING LLC, <br><br>                              Plaintiffs, <br><br>      v. <br><br> USENET.COM, <br><br>                              Defendant. | Case No. 07-civ-8822 (HB) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO DISMISS COUNTERCLAIMS**

Steven B. Fabrizio (SF-8639)
Luke C. Platzer (LP-0734)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC  20001-4412
Telephone (202) 639-6000
Facsimile (202) 639-6066
sfabrizio@jenner.com
lplatzer@jenner.com

Gianni P. Servodidio (GS-0713)
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
Telephone (212) 891-1690
Facsimile (212) 891-1699
gservididio@jenner.com

*Attorneys for Plaintiffs*

In its opposition to Plaintiffs' Motion to Dismiss, defendant Usenet.com does not dispute that its counterclaims under Section 512 of the Digital Millennium Copyright Act ("DMCA") present issues factually and legally identical to the questions already before the Court on Defendant's affirmative defenses in this action, and that its non-infringement counterclaim is identical to Plaintiffs' secondary infringement claims. Nor does it cite a single case in which a court has found mirror-image counterclaims, such as those that Defendant has sought to interpose here, anything other than redundant. Instead, Defendant readily acknowledges that its counterclaims can survive dismissal only if they serve a "useful purpose" on the "facts and circumstances of the individual case," Opp. 8, but then offers nothing to meet this standard. The two so-called "purposes" Defendant offers for its counterclaims – that they protect it from continued uncertainty if Plaintiffs somehow dismissed their entire case, and that they entitle Defendant to recover attorneys' fees under the Copyright Act – are counter-factual and contrary to established legal principles. The Court should dismiss or strike Defendant's counterclaims and treat them as affirmative defenses, which is what they are.

**I.      Defendant Has Failed to Articulate Any "Useful Purpose" for its Counterclaims.**

There is no dispute that the two issues presented by Defendant's counterclaims – whether Defendant is secondarily liable for copyright infringement and whether the DMCA, in whole or in part, shields Defendant from monetary liability – will be at the forefront of Plaintiffs' case-in-chief and the defenses already raised by Defendant. Indeed, it is impossible to imagine this litigation being adjudicated *without* the Court deciding the precise issues raised in Defendant's counterclaims, *i.e.* whether Defendant's conduct falls within the protections of the DMCA, whether Defendant has adopted and reasonably implemented a repeat infringer termination policy; and whether its activities "constitute inducement of copyright infringement,

1

contributory copyright infringement, or vicarious copyright infringement." *See* Def. Counterclaims 2(a)-(g). Defendant does not even purport to argue that the adjudication of Plaintiffs' claims and Defendant's existing affirmative defenses will afford less than final and complete relief with respect to all outstanding issues between the parties.

Unable to point to any distinct factual or legal issues raised by its counterclaims, Defendant's entire Opposition rests on the pure speculation that its counterclaims will bring "final resolution of the ongoing infringement controversy between the parties . . .*if* . . . *Plaintiffs subsequently dismiss their infringement claims*." Opp. at 10 (emphasis added). But this contention is based entirely on the misguided premise that Plaintiffs can or conceivably would drop this case – an outcome which even Defendant describes as an "unlikely event." Opp. at 1. Plaintiffs have invested substantial resources to protect their copyrighted sound recordings from massive online infringement by operators of file trading services such as Napster, Grokster, Kazaa and now the next generation of online service providers such as Defendant. The fanciful notion that Plaintiffs would simply abandon this kind of litigation in mid-stream against a defendant that has built a business on the massive and intentional infringement of their copyrights provides no rational justification for the Court's assertion of its discretionary jurisdiction over the counterclaims.

But leaving aside the implausibility of Defendant's position, its argument betrays a misunderstanding of the Rules of Civil Procedure. Plaintiffs *could not*, even if so inclined, dismiss this action without prejudice and then continue to threaten Defendant with litigation; once a defendant files its answer and joins the issues raised in a plaintiff's complaint, Fed. R. Civ. Pro. 41 precludes the voluntary dismissal of the action by the plaintiff without prejudice. Even if Plaintiffs wanted to dismiss this action, they could do so only with defendant's consent

by stipulation or "by court order, on terms that the court considers proper." Fed. R. Civ. Pro. 41(a)(2). As the court noted in *Strickrath v. Globalstar, Inc.,* No. C07-1941 TEH, 2008 WL 2050990 (N.D. Cal. May 13, 2008), "[t]he adoption of Fed. R. Civ. P. 41(a), which provides that a plaintiff cannot terminate the action as of right once defendant has filed an answer, means that defendants no longer need a counterclaim solely to protect against a plaintiff's dismissal without prejudice." *Id.* at *5 n.4 (quoting Wright & Miller, Federal Practice & Procedure § 1406 at 34). Defendant's contention that it needs counterclaims to protect itself from perceived gamesmanship is unwarranted.

Defendant's second proffered "useful purpose" – that reframing its affirmative defenses as counterclaims will protect "the recovery of its attorneys' fees as a prevailing party," Opp. at 11 – is equally specious. As a matter of well-established copyright jurisprudence, the assertion of a counterclaim is irrelevant to Defendant's entitlement to attorney's fees; under Section 505 of the Copyright Act, "[p]revailing plaintiffs and prevailing defendants are to be treated alike." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Moreover, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Id*. Defendant does not need to recast itself as counterclaimant to be eligible for attorney's fees in the event it prevails, nor does recasting itself as counterclaimant affect whether it should be granted attorney's fees if it does.

Tellingly, Defendant does not cite a single case in which a court has permitted redundant counterclaims to proceed. The three cases it cites for support are all inapposite. *Vernor v. Autodesk, Inc.*, No. C07-1189RAJ, __ F. Supp. 2d ___, 2008 WL 2199682 (W.D. Wash. May 20, 2008) stands only for the unremarkable proposition that a party faced with specific and credible threats of litigation causing present harm has standing to bring an action for declaratory

judgment. *Id*. at *3.[1]  It says nothing about the propriety of bringing such an action for declaratory judgment when the same issues are *already* before the Court, as here.  *Strickrath,* a case where the court struck a defendant's counterclaims as duplicative, does not help defendant either.  Although *Strickrath* noted in dicta that courts in patent and trademark cases sometimes permit counterclaims alleging that the patent or trademark at issue is invalid, *see* 2008 WL 2050990 at *4, that is because the validity of a patent or trademark will not necessarily be resolved in adjudicating the underlying action – such infringement cases can be adjudicated on the merits "'without adjudicating the validity of the underlying intellectual property.'" *Id*. (citing *Pettrey v. Enterprise Title Agency, Inc.*, 2006 WL 3342633, 3 (N.D. Ohio, Nov. 17, 2006)).  Similarly, the Court in *Interscope Records v. Kimmel*, No. 3:07-cv-0108, 2007 WL 1756383 (N.D.N.Y. June 18, 2007) dismissed defendant's counterclaims under similar circumstances noting*,* like here, that the defendant's counterclaims did not "challenge the validity of the Plaintiffs' copyrights." *Id*. at *4.  Although *Kimmel*, like *Strickrath*, noted that courts sometimes permit counterclaims challenging the validity of patents – which might not otherwise be resolved by the litigation – Usenet.com has not counterclaimed seeking a declaration that Plaintiffs lack enforceable copyrights in their sound recordings.  Rather, in this case the parties' claims and defenses squarely frame for adjudication on the merits the issues in Defendant's counterclaims.  Unlike a patent infringement case where invalidity is raised as a defense, it is difficult to conceive of how this case could be decided without the Court's deciding whether Defendant is

---

[1] Although the Defendant in *Autodesk* had issued DMCA takedown notices in addition to making specific threats to sue, *see* 2008 WL 2199682, at *3, any similarity ends there.  The takedown notices in *Autodesk* were being issued to a third party, eBay, and were themselves causing an "inability to engage in [Plaintiff's] business" because eBay kept responding by removing Plaintiff's postings and suspending his account. *Id*.  Thus, in *Autodesk*, unlike here, the notifications of alleged infringement were causing harm to the plaintiff distinct from merely depriving him of the safe harbor in the future if he refused to comply and was sued for the infringements at issue.

liable for secondary infringement and whether the DMCA limits its monetary liability. Just as in *Interscope Records v, Duty*, No. 2:05-CV-3744-PHX-FJM, 2006 WL 988086, (D. Ariz. April 14, 2006), the issues presented by Defendant's counterclaims "will be decided by this court regardless of the declaratory judgment claim unless the parties stipulate to settlement, or the Recording Companies move to voluntarily withdraw their complaint and the court so orders pursuant to Rule 41(a)(2)" and "[t]herefore, [the] claim for a declaratory judgment is redundant and unnecessary." *Id*. at *3.

### III.    Jurisdiction Under The Declaratory Judgment Act Is Unwarranted.

Relying on the same flawed arguments described above, Defendant contends that exercise of the Court's declaratory judgment jurisdiction would be appropriate because it would "clarify[] or settl[e] the legal issues involved and would offer a sense of finality," and would also "end the controversy and offer relief from future uncertainty." Opp. at 11-12. But again it fails to show why adjudication of this case will not already accomplish those exact same goals absent Defendant's duplicative pleadings. Defendant's argument that "Plaintiffs' causes of action do not require them to demonstrate" that they prevail under the DMCA, Opp. at 11, ignores that Defendant's affirmative defenses *do* require litigation of those issues, and that Defendant's non-infringement counterclaim is already encompassed by Plaintiffs' causes of action. The question is not whether a declaratory judgment action would provide some legal benefit in isolation, but whether there is any reason to entertain such counterclaims when they are already otherwise before the Court. Defendant shows none.

### IV.    The DMCA Is Not An Appropriate Basis For Affirmative Relief In This Case.

Defendant contends that its arguments under the DMCA should not be treated as an affirmative defense pursuant to Fed. R. Civ. P. 8(c)(2), but cites no authority for the proposition

5

that the DMCA can be a basis for affirmative relief rather than an affirmative defense to a specific charge of infringement.  This is because the DMCA plainly does not provide blanket immunity for any and all claims of copyright infringement for all periods of time; it is only a defense to specific claims of infringement for specific works provided that a defendant qualifies under the statutory criteria for immunity.  Indeed, at any given time, a single defendant could be entitled to DMCA protection with respect to certain claims, and not for others.

For example, as one court recognized in refusing to entertain an action for declaratory judgment under Section 512(c) of the DMCA in *Veoh Networks, Inc. v. UMG Recordings, Inc.* 522 F. Supp. 2d 1265, 1269-70 (S.D. Cal. 2007), an affirmative declaration that a business is entitled to the DMCA 512(c) safe harbor, as Defendant seeks here, would amount to a "blanket validation of the ongoing legality of their business model" that would be "equally applicable against . . . any other copyright holder," and could, if granted, inappropriately amount to a "'free pass' to infringe rights in the future."  522 F. Supp. 2d at 1270 & 1270 n.3.  Defendant obviously desires such an advisory declaration here.  It claims that "Usenet.com allows users access to *all sorts* of content . . . and will continue to remain subject to claims of ongoing infringement" absent the declaratory judgments it seeks, Opp. at 10 (emphasis added), and its counterclaims (except with respect to Plaintiffs' takedown notices) are not limited to Plaintiffs' copyrighted sound recordings but rather seek declarations more generally that Usenet.com's business model is noninfringing and protected by the DMCA.  *See* Answer at 10.  Defendant might desire protection from lawsuits by other copyright-holders whose works it also distributes, but those parties are not before the Court, and the only dispute that "involves specific copyrights that have been identified," Opp. at 12-13, Plaintiffs' sound recordings, is already before the Court for adjudication.  A pronouncement on Defendant's infringement or protection from liability beyond

6

Plaintiffs' copyrighted works – questions that are, in any event, "highly factual and time-sensitive," *Veoh Networks*, 522 F. Supp. 2d at 1270 n.3 – would plainly not be an appropriate exercise of the Court's declaratory judgment jurisdiction.

**V.    Defendant's Description of Its Service is Irrelevant and Misleading.**

Unable to answer the narrow issue raised in Plaintiffs' Motion to Dismiss, Defendant's Opposition includes a lengthy and misleading description of its service under the guise of helping "the Court . . . understand how USENET works," Opp. at 2 n.1.  Given that Defendant itself recognizes that this discussion is irrelevant, *see id.*, Plaintiffs will limit their response to addressing the most glaring distortions contained within Defendant's opposition brief.

First, contrary to Defendant's description of "The Usenet System," this case is not about some generic Usenet network or the particular technology used to access content on that network.  Although Defendant adopted the confusing name Usenet.com, Inc. as the name of its business, Defendant's activities cannot be conflated with the Usenet network as a whole.  Defendant did not invent, design or develop the Usenet network.  It merely uses certain functionalities of that network to enable, facilitate and profit from widespread copyright infringement by selling access to its own high-speed computer servers.  As Defendant itself describes in its now-withdrawn Motion to Dismiss, "[t]he essence of the service Usenet.com provides is access to and use of Usenet.com's computer servers."  Defendant's Motion to Dismiss for Lack of Jurisdiction at p. 14 (Docket No. 11).  The extent to which third parties offer the same or similar services as Defendant through the Usenet network is irrelevant.  Under *Grokster* and other prevailing authorities, Defendant is responsible for its own conduct.  *See, e.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934-37 (2005).

Second, Defendant's representation that "[t]he content stored on Usenet.com servers is . . . entirely controlled by third-party users of the USENET system," Opp. at 5, is simply false. Defendant unquestionably has control over its own servers; it makes affirmative decisions with respect to the content that is received and stored on those servers and content that is rejected and not stored. Defendant can (but chooses not to) terminate user access of subscribers engaged in the uploading and downloading of copyrighted files. Defendant can also pick and chose what newsgroups to subscribe to and therefore receive and store on its servers. As alleged in the Complaint, Defendant affirmatively offers subscribers access to groups of digital files (i.e. newsgroups) that are organized into infringement-inspired categories, and it has touted access to this pirated content as "[t]oday's hottest way of sharing MP3 files over the Internet," and the best way to get "free" music now that "[f]ile sharing websites are getting shut down." Complaint., Exs. B & C.[2]

Third, Defendant's contention that it "has a long standing policy against the use of its system to upload unauthorized or inappropriate content" and "enforces this policy by means including the termination of a user's access rights" is misleading at best. Discovery has confirmed that Defendant has never terminated any of its subscribers' right of access to the content on its servers for engaging in the illegal downloading or uploading of copyrighted works, notwithstanding the right and ability to do so. Indeed, Defendant's business model depends on the high volume of infringing downloads by its subscribers. Since files containing illegal copies of Plaintiffs' sound recordings and other entertainment content are significantly larger than text files, the more of these files downloaded by Defendant's subscribers, the more money it makes.

---

[2] Since these statements effectively concede liability in this case, it is not surprising that Defendant sanitized its website sometime after the commencement of this action to remove such promotional statements.

8

*See* Complaint ¶ 22 (explaining that Defendant offers its subscribers "tiers" of service where the greater the volume of material downloaded, the higher the subscription fee).

Finally, Defendant offers a one-sided and misleading description of the pre-litigation correspondence between the parties in an attempt to deflect attention from its own conduct. For example, Defendant complains that one of Plaintiffs' many infringement notifications was not in electronic form, Opp. at 6, and yet it does not claim that this violated the DMCA requirement that a notice be a "written communication" 17 U.S.C. § 512(c)(3)(A). Similarly, Defendant criticizes Plaintiffs for providing Defendant with a "representative list" of certain "newsgroups" hosted on its servers that contained voluminous infringements of Plaintiffs' sound recordings, and yet it cannot reasonably dispute that, under the circumstances of this case, such notices are permitted under the express provisions of the DMCA. *See* 17 U.S.C. § 512(c)(3)(A)(ii).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike or dismiss Defendant's Counterclaims.

9

Dated: July 2, 2008  
New York, NY

         __/s/ Gianni P. Servodidio_____  
         Steven B. Fabrizio (SF-8639)  
         Luke C. Platzer (LP-0734)  
         JENNER & BLOCK LLP  
         1099 New York Avenue, N.W.  
         Suite 900  
         Washington, DC  20001-4412  
         Telephone (202) 639-6000  
         Facsimile (202) 639-6066

         *-and-*

         Gianni P. Servodidio (GS-0713)  
         JENNER & BLOCK LLP  
         919 Third Avenue  
         37th Floor  
         New York, NY 10022  
         Telephone (212) 891-1690  
         Facsimile (212) 891-1699

         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served a true and correct copy of the foregoing Plaintiffs' Reply Memorandum of Law in Support of Motion to Strike or, in the Alternative, to Dismiss Counterclaims, on the following Counsel for Defendant, by Electronic Mail and the Court's ECF Filing System:

Charles S. Baker
Joseph D. Cohen
John R. Hawkins
PORTER & HEDGES, LLP
1000 Main Street
36th Floor
Houston, TX 77002
cbaker@porterhedges.com
jcohen@porterhedges.com
jrhawkins@porterhedges.com

Lauren E. Handler
PORZIO, BROMBERG & NEWMAN, PC
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997
lehandler@pbnlaw.com

Date: July 2, 2008                    __/s/ Gianni P. Servodidio_____
                                              Gianni P. Servodidio