# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISTA RECORDS LLC; ATLANTIC RECORDING CORPORATION; BMG MUSIC; CAPITOL RECORDS, LLC.; CAROLINE RECORDS, INC.; ELEKTRA ENTERTAINMENT GROUP INC.; INTERSCOPE RECORDS; LAFACE RECORDS LLC; MAVERICK RECORDING COMPANY; SONY BMG MUSIC ENTERTAINMENT; UMG RECORDINGS, INC.; VIRGIN RECORDS AMERICA, INC.; WARNER BROS. RECORDS INC.; and ZOMBA RECORDING LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 07-civ-8822 (HB) |
| Plaintiffs, | ) ) **FIRST AMENDED** |
| v. | ) **COMPLAINT FOR DAMAGES** ) **AND FOR DECLARATORY** ) **AND INJUNCTIVE RELIEF** |
| USENET.COM, INC.; SIERRA CORPORATE DESIGN, INC.; and GERALD REYNOLDS, | ) ) ) ) |
| Defendants. | ) ) |

Plaintiffs allege as follows:

## INTRODUCTION

1.      For much of the past decade, copyright owners, including the record companies that are plaintiffs in this action, have been plagued by rampant copyright piracy occurring through unlawful peer-to-peer ("P2P") file sharing and other illicit internet-based services. Courts around the country – including the United States Supreme Court – have rendered decisions making it plain that such services facilitate and induce massive copyright infringement. As a result, notorious P2P services such as the original Napster, Aimster, Grokster and Kazaa have been forced either to shut down or to become legitimate services providing access to licensed rather than pirated works.  In the wake of these developments, users displaced from

these services have sought alternate means to continue the easy and large-scale infringement to which they have become accustomed.  Defendants and infringers like them have rushed to fill the void by providing their customers with convenient – and unauthorized – access to copyrighted music.

2.        Defendants sell access to a body of content from a global network of computers known as "Usenet," as well as from their own users, that contains (without authorization) millions of copyrighted sound recordings.  Defendants do so via a seamlessly integrated service – known as the "Usenet.com service" – which the Defendants work together to provide. Defendants have touted their service on their Usenet.com website as a haven for those seeking pirated content, claiming that it provides "[t]oday's hottest way of sharing MP3 files over the Internet" without getting caught.  *Mp3 Newsgroups, available at* www.usenet.com/articles/mp3_newsgroups.htm (last visited October 5, 2007) (attached hereto as Exhibit B).  Defendants have boasted further that their service is the best way to get "free" music now that "[f]ile sharing websites are getting shut down."  *Free Download, available at* www.usenet.com/articles/free_download.htm (last visited October 5, 2007) (attached hereto as Exhibit C).

3.        Defendants' service enables and encourages its customers to reproduce and distribute millions of infringing copies of Plaintiffs' valuable copyrighted sound recordings. Defendants do so by loading online bulletin boards or "newsgroups" obtained from the Usenet network onto servers owned or controlled by Defendant Sierra Corporate Design, Inc. Defendants then sell access to the newsgroups they have chosen to host through their Usenet.com service.  Defendant Gerald Reynolds controls and personally participates in all aspects of Defendants' infringing Usenet.com service.  Many of the newsgroups that Defendants

choose to offer are explicitly dedicated to copyright infringement.  Users of Defendants' service

post copyrighted sound recordings to these newsgroups on Defendants' servers; the works are

identified by artist and title so that users can easily find any sound recording they might want to

copy.  Those copyrighted works are then propagated worldwide, allowing millions of users of the

Usenet network, including Defendants' own subscribers, to copy copyrighted sound recordings

with ease and anonymity – and without authorization.

        4.        Defendants provide essentially the same functionality that P2P services such as

Napster, Aimster, Grokster and Kazaa did (prior to being enjoined by the federal courts) –

knowingly providing the site and facilities for users to upload and download copyrighted works –

except that the Defendants go further than even the P2P services to facilitate and encourage

copyright infringement by their users.  Defendants customize their service to make it as

convenient and seamless as possible for subscribers to distribute and obtain copyrighted music

without authorization and without paying for that music.  Finding and downloading copyrighted

works for free from Defendants' servers takes just a few simple steps, whether through

Defendants' own web interface or a newsreader program.  *See* Exhibit D, attached hereto (screen

shots of process).  Defendants offer faster downloading capabilities than P2P services because

Defendants host infringing files on their own, commercial-grade servers.  Defendants offer ever-

increasing storage times for those infringing files, providing longer and longer access to that

material by users.  And Defendants promise infringers an anonymity they do not enjoy on P2P

services, boasting on the Usenet.com website that they do not track user uploading or

downloading of files, but instead provide "anonymous[]" access because "your IP address cannot

be tracked, and your downloads cannot be monitored."  *Premium Usenet and Newsgroup Access:*

*Secure-Tunnel, available at* http://www.usenet.com/secure_tunnel.htm (last visited October 5, 2007) (attached hereto as Exhibit E).

5.      As a direct result of Defendants' conduct, thousands of the most popular sound recordings – and even works not yet available to the general public – are infringed every day. Absent Defendants' active and ongoing participation in the daily acts of infringement, this widespread unauthorized copying and distribution of Plaintiffs' valuable property could not happen on the scale that it does. The harm to Plaintiffs, who invest millions of dollars and enormous creative energies to produce their creative copyrighted works, is manifest and irreparable.

## JURISDICTION AND VENUE

6.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

8.      This Court has personal jurisdiction over the Defendants, Usenet.com, Inc. ("Usenet.com"), Sierra Corporate Design, Inc. ("Sierra"), and Gerald Reynolds ("Reynolds"). Defendant Usenet.com has consented expressly to jurisdiction in this Court. Defendant Sierra is equally subject to personal jurisdiction as it has, at all times, acted in concert with Defendant Usenet.com in providing the Usenet.com service, including, on information and belief, in its former capacity as sole shareholder of Defendant Usenet.com. Further, Defendant Reynolds is equally subject to personal jurisdiction as he has, on information and belief, at all times been personally responsible for all of Usenet.com's operations as its CEO, director, and now sole shareholder. Defendants Reynolds, Usenet.com, and Sierra are alter egos of each other, and act fully in concert with each other. Defendant Reynolds is the primary actor in virtually all of

4

Usenet.com's and Sierra's infringing activities, personally participating in those infringing activities, as explained more fully below. Defendants have chosen to direct their infringing activities at New York, including by entering into contracts and other arrangements via Usenet.com with residents of New York, who account for a considerable portion of Defendants' subscribers, and by enabling New York residents to access infringing files, technical support and other services through Defendants' newsgroup service. The voluminous acts of direct infringement for which Defendants are liable require a high level of interaction between users, their computers, and Defendants' website and servers. Thus, Defendants do continuous and systematic business in New York and are hence present in New York, *see* N.Y. C.P.L.R. § 301, transact business in New York, and contract to supply goods and services in New York in connection with the matters giving rise to this suit. *See id.* § 302(a)(1). Defendants also commit infringing acts outside of New York causing injury to Plaintiffs in New York, and Defendants regularly do or solicit business in New York and derive substantial revenue from goods or services rendered in New York, and/or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce. *See id.* § 302(a)(3).

9.     Venue in this District is proper under 28 U.S.C. § 1391(b), (c), and/or 28 U.S.C. § 1400(a). Defendant Usenet.com, Inc. has consented to both jurisdiction and venue in this District. Defendants Sierra and Reynolds are equally subject to venue here as they act in full concert with Defendant Usenet.com in providing the infringing Usenet.com service and have been responsible for Defendant Usenet.com's infringing activities. Moreover, a substantial part of the acts of infringement complained of herein occur or have occurred in this District. Furthermore, Plaintiffs Arista Records LLC, Atlantic Recording Corporation, BMG Music,

Capitol Records, LLC, Caroline Records, Inc., Elektra Entertainment Group, Inc., LaFace

Records LLC, Sony BMG Music Entertainment, Virgin Records America, Inc. and Zomba

Recording LLC have their principal places of business in New York and in this District;

Plaintiffs Interscope Records and UMG Recordings, Inc. each has a place of business in New

York and in this District; all Plaintiffs have been injured in New York by Defendants' infringing

conduct.

## <u>THE PARTIES</u>

### *The Plaintiffs*

10.    Plaintiffs are among the most well-known and respected record companies in the

United States and the world.  They are in the business of producing, manufacturing, distributing,

selling, and licensing the distribution and sale of sound recordings, or arranging to do so, in the

United States.  The reputations of Plaintiffs as producers of sound recordings containing high

artistic and technical quality are favorably known in the State of New York, and throughout the

United States and the world.

11.    Plaintiffs, including their affiliates and/or subsidiaries, are the copyright owners

or owners of exclusive rights under copyright with respect to the vast majority of copyrighted

sound recordings legitimately sold in the United States.  Each Plaintiff enjoys exclusive rights of

reproduction and distribution as to its copyrighted works.  17 U.S.C. § 106.

12.    In addition to manufacturing, distributing, selling, and licensing phonorecords in

the form of CDs, cassettes and other tangible media, Plaintiffs also sell, distribute and license

phonorecords in the form of digital audio files, which are marketed and sold online, and

delivered to the consumer instantly via the Internet and otherwise.  Legitimate avenues for the

digital distribution of music exist through authorized services, such as Apple's iTunes, Napster,

and Rhapsody; many others currently exist or are still emerging.

13.    Plaintiffs have invested and continue to invest substantial sums of money, as well as time, effort, and creative talent, to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, and license sound recordings embodying the performances of their exclusive recording artists.  Plaintiffs have invested and continue to invest substantial resources in developing the legitimate market for digital distribution of sound recordings through agreements with digital service providers.  Plaintiffs, their recording artists, and others in the music industry are compensated for their creative efforts and monetary investments largely from the sale and distribution of their sound recordings to the public, and from other exploitation of such sound recordings, including authorized online sale and distribution by others and licensed public performances by means of digital audio transmissions.

14.    A non-exhaustive, exemplary list of Plaintiffs' federally copyrighted sound recordings that Defendants infringed is attached hereto as Exhibit A.  Each Plaintiff has received Certificates of Copyright Registration from the Registrar of Copyrights for these copyrighted sound recordings.

### *Defendants*

15.    Defendants together operate a single integrated service that engages in, enables and induces copyright infringement by Usenet.com subscribers.  Defendants conspire and act in active concert and participation with each other to infringe the valuable copyrights of plaintiffs and other copyright holders.  While Defendants have purported to disaggregate certain of the interrelated elements of their service by allocating certain functions to corporate shell entities, namely Defendants Usenet.com and Sierra, each Defendant is an alter ego of each other Defendant, and Defendants Usenet.com and Sierra are mere instrumentalies of Defendant Reynolds, who wholly owns, controls and runs them, on information and belief, without regard

to corporate formalities.  Defendants Usenet.com, Inc. and Sierra are both Nevada corporations

with their principal places of business in Fargo, North Dakota.

16.    As described in more detail herein, Defendants sell access to a body of content

hosted on computers servers operated by Defendants Usenet.com and Sierra.  Defendant

Usenet.com operates the "front end" website and servers which its subscribers access directly in

order to download or upload copyright infringing files.  Defendant Sierra operates the "back

end" servers that receive and host copies of these files for extended periods of time such that

they are available "on demand" to Usenet.com subscribers.  For example, when a subscriber of

Defendant Usenet.com requests a specific file to be downloaded, this request is transmitted to

Defendant Usenet.com, which (unless it already has the specific file itself) sends the request to

Defendant Sierra, which then sends a copy of the requested file to Usenet.com, which in turn

transmits the requested file to the subscriber.  To defendant Usenet.com's subscribers, the

interaction between the front and back end servers is invisible: there is a single integrated

"service" provided by Defendants under the Usenet.com name.  On information and belief,

Reynolds is currently the sole owner and officer of Defendant Sierra; the sole owner, CEO, and

director of Defendant Usenet.com; and personally operates the Usenet.com service using those

companies; Defendant Reynolds personally participates in the infringing activities alleged

herein.

17.    On information and belief, Defendant Reynolds has been the CEO and the

director of Defendant Usenet.com since its formation in 2004, and an officer of Sierra since its

inception.  Since October 2007, on information and belief, Defendant Reynolds has also been

Usenet.com's sole shareholder, before which the sole shareholder was Sierra.  On information

and belief, Defendant Reynolds has personally participated in, authorized and approved, has had

the right and ability to supervise, and has profited from virtually all aspects of Usenet.com's and

Sierra's operations including without limitation, providing subscribers with access to infringing

copies of plaintiffs' copyrighted sound recordings; receiving and storing copies of such

infringing works on computer servers owned or controlled by Usenet.com or Sierra; making

available for download, reproducing, storing and disseminating to Usenet.com subscribers

infringing copies of plaintiffs' copyrighted sound recordings; and promoting the availability of

infringing content to subscribers of the Usenet.com service.  On information and belief,

Defendant Reynolds has been the moving, active and conscious force behind all of Usenet.com's

and Sierra's infringing activities set forth herein.  In addition, on information and belief,

Defendant Reynolds has exercised complete influence and control over the activities of

Usenet.com and Sierra such that Defendant Reynolds and Defendants Usenet.com and Sierra

have the same interests, are inseparable from one another, and are mere alter egos of each other

such that limiting liability solely to Defendants Usenet.com and Sierra would promote injustice

and sanction an abuse of the corporate form.

## DEFENDANT'S INFRINGING CONDUCT

### The Usenet Network

18.     Defendants operate computer servers that form part of the Usenet network and

sell to subscribers a service, located at www.usenet.com, that provides access to the Usenet

network.  The Usenet network is a set of interconnected servers – operated by numerous different

entities – that each hosts the contents of various "newsgroups."  Newsgroups are online bulletin

boards dedicated to particular topics or subject matters on which users can post and respond to

messages.  Providers of access to newsgroups, such as Defendants, store copies of newsgroup

messages on their servers and "synchronize" their servers with the other servers that are part of

the Usenet network worldwide.  Synchronized Usenet servers constantly update one another with new messages and receive updates from servers maintained by other entities.  Thus, a message or file posted to and stored on a server operated by one provider that has configured its service in this manner, such as Usenet.com, is automatically propagated worldwide to Usenet servers operated by other such providers.

19.    The Usenet network has existed for well over two decades.  Originally a medium for public discussion, the network was designed to carry text messages of limited length.  Thus, the Usenet network's original newsgroups were text-based groups devoted to topics such as politics (*e.g.*, "alt.politics.usa.congress").  Although these text-based newsgroups still exist, there are now thousands of so-called "binary" newsgroups.  The binary newsgroups allow users to copy and disseminate large computer files, rather than simply small text messages.  According to Defendants, 99% of the content on the Usenet network is in these binary newsgroups.  Huge numbers of "binary" newsgroups are devoted to the distribution of music, movies, television shows, images, and other non-text files – in most cases copyrighted works being disseminated without authorization.

20.    Even a superficial review of the newsgroups in this latter category reveals that they are open and notorious about their purpose and the infringing content that they offer.  These newsgroups typically have had names that leave little doubt as to that purpose, such as alt.binaries.sounds.2000s.mp3, alt.binaries.sounds.1990s.mp3, alt.binaries.sounds.1980s.mp3, alt.binaries.sounds.complete_cd, alt.binaries.sounds.mp3.full_albums, alt.binaries.country.mp3, and alt.binaries.sounds.mp3.rap-hiphop.  Some of these newsgroups have "charters" that explain precisely what is to be posted on and available from the newsgroup and/or include features that allow users to request that specific sound recordings be posted by other users.  *See MP3 Binaries*

*FAQ, available at* http://www.faqs.org/faqs/music/mp3/newsgroups-faq/ (last visited October 5, 2007) (describing the "request" process on binary newsgroups and explaining the types of sound recordings that should be posted in "decade" and "genre" newsgroups) (attached hereto as Exhibit F). And, on these and other newsgroups, users post copies of copyrighted sound recordings with titles – or "headers" – that openly identify the posting to other users as a sound recording by, for example, specifying the artist name or song or album title, as in "Subject: (<<< www.usenetdevils.com>>> Phil Collins Love Songs by MediaMonky) [05/36] "105 - Phil Collins  - Can't Turn Back The Years.mp3" (01/13)."

### The Defendants' Service

21.    Many people have access to a subset of Usenet newsgroups through their Internet service providers (ISPs), entities that also provide email and other services. ISPs typically have chosen not to carry binary newsgroups – such as those mentioned above – that are open and notorious in their offerings of infringing content. Usenet.com, in contrast, is one of a group of niche services that sell – for a monthly fee – "unrestricted access" to newsgroups that are not carried by other providers, including many that are openly dedicated to the illegal distribution of Plaintiffs' copyrighted sound recordings. Binary newsgroups dedicated to the propagation of infringing material and offered through Usenet.com number in the hundreds. At any given moment, there are millions of obviously copyrighted sound recordings stored on and disseminated from the binary newsgroups that Defendants have chosen to offer to their customers. Indeed, Defendants' Usenet.com website at one point represented that "*billions*" of copies of sound recordings were available for download each day. *Usenet Mp3s, available at* http://www.usenet.com/articles/usenet_mp3s.htm (last visited October 5, 2007) (emphasis added) (attached hereto as Exhibit G).

11

22.     Through their service, Defendants provide to users all of the tools needed to engage in massive copyright infringement and thus materially contribute to the infringement occurring over the Usenet.com service.  In operation, it is almost identical to the original Napster and other unlawful P2P services, but with enhancements that make the service more attractive for users intending to engage in infringement.  Unlike P2P services, which rely on individual users to store copyrighted content on their personal computers, Defendants store the copyrighted sound recordings on their own high-quality commercial servers – both the front end Usenet.com servers and, for extended periods of time, the back end Sierra servers – to enable users to obtain copies of copyrighted sound recordings as quickly as possible.   Of the countless newsgroups available on the Usenet network generally, Defendants select the specific subset of newsgroups to offer to their subscribers, making the affirmative decision to carry newsgroups dedicated to infringement, including Defendants' recent, affirmative decision to resume carrying, reproducing, and distributing newsgroups dedicated to the infringement of Plaintiffs' works, which they had initially disabled to manipulate evidence in this litigation.  Apart from any specific request by a user, Defendants proactively make copies or cause to be made copies of articles in the newsgroups they have chosen to host, sorting and replicating them across many of their commercial-grade servers in order to make them easier for their subscribers to locate and download.  And Defendants promote software, including a newsreader program called "News Rover" that facilitates searching for, uploading, and downloading of files stored across different binary newsgroups, as well as the burning of CDs and DVDs.

23.     Like P2P services, Defendants' integrated business model depends on the massive infringement that it facilitates.  Defendants make their money by charging users a monthly subscription fee for access to the newsgroups the Usenet.com service offers.  Defendants use the

lure of free, copyrighted sound recordings as a draw to their service, attracting subscribers and thereby earning revenues.

24.    Defendants' profits increase with the amount of infringement that they foster. The Usenet.com service offers "tiers" of service, depending on the volume of files that subscribers download. The greater the amount of material a user wishes to download monthly, the higher the subscription fee. Binary files – the type of file that must be used to upload and download copyrighted sound recordings – are significantly larger than text files. The more copyrighted sound recordings users download, the more money Defendants make. Indeed, Defendants market these higher levels of service on the Usenet.com website directly to users seeking free and unrestricted access to sound recordings. As Defendants have advertised, "[t]he number of mp3s you can download depends on your daily download limits, of course, which depend on the type of account you have. Usenet.com, for example, offers an "Unlimited" membership account which *allows members to download all the mp3s they want* without worrying about reaching or exceeding their download limits." *Usenet Mp3s, available at* http://www.usenet.com/articles/usenet_mp3s.htm (emphasis added) (Exhibit G).

*Defendants' Knowledge and Encouragement of Infringement*

25.    Defendants were and continue to be well aware that they are hosting and disseminating large amounts of infringing content. Indeed, Defendants have promoted their service on the Usenet.com website to people who "[l]ove [d]ownloading [f]ree [m]p3s" as granting access to the "most comprehensive source of free mp3s, videos, and movies that you find online today." *Free MP3, available at* www.usenet.com/articles/free_mp3.htm (last visited October 5, 2007) (attached hereto as Exhibit H). The Usenet.com website has advertised that it provides access to the "Internet Underground" where users "*do not have to pay per mp3, so you can virtually download all the files that your heart desires.*" *Id.*  Defendants have also

13

advertised on the Usenet.com website that their service is comprehensive – providing access to

"*billions of mp3s that can be downloaded by anyone with a Usenet account.* Many are added

daily in different music newsgroups so be sure you are checking them on a regular basis, so that

you keep your collection complete. *No other source for mp3s hosts that many music files at*

*one place!*" *Usenet Mp3s, available at* http://www.usenet.com/articles/usenet_mp3s.htm

(emphasis added) (Exhibit H).

  26. The fact that most of these purportedly "free" mp3s, videos, and movies are not

licensed for free distribution is self-evident. In fact, newsgroups are widely touted – in

numerous publications, Internet postings, and other media – as a great source of infringing

material, one that is superior to P2P services. *See, e.g.*, Thomas Mennecke, "BitTorrent vs.

Usenet," Jan. 9, 2007, *available at* http://www.slyck.com/story1376.html (comparing Usenet

favorably to the BitTorrent P2P service as a piracy tool) (last visited October 5, 2007) (attached

hereto as Exhibit I). Users of newsgroups on Defendants' servers chat regularly and openly

about their ability to infringe copyrights through the Usenet service with minimal chance of

being caught by copyright owners or law enforcement. As one typical poster extols, "It may not

be elegant, but it works, I can download all day long with out worrying about the RIAA

[Recording Industry Association of America]." Post from "Technobarbarian," *Binary*

*newsgroups, and file sharing applications . . .*, alt.music.mp3, Aug. 6, 2004 (last visited

October 8, 2007) (attached hereto as Exhibit J).

  27. Defendants have marketed their service, including via the Usenet.com website, as

a haven for copyright infringement and have targeted their advertising at communities of known

copyright infringers. Defendants have consciously and blatantly promoted Usenet.com as a

replacement for P2P services now that many such services have been shut down or forced to

adopt measures that make it more difficult to exchange infringing material. Defendants have advertised on the Usenet.com website that, with "[f]ile sharing websites . . . getting shut down," the "solution" for "the Internet user who loves to download stuff for free" is Defendants' service. *Free Download, available at* www.usenet.com/articles/free_download.htm (Exhibit C). With the disappearance of several prominent P2P services, Defendants have likewise promised that their service "is truly an unparalleled source for free music downloads that cannot be compared to file sharing programs and websites, such as KaZaa or Audiogalaxy," and that "Usenet beats them all by far, judging by the amount of free music downloads it contains and the variety you can expect." *Free Music, available at* www.usenet.com/articles/free_music.htm (last visited October 5, 2007) (attached hereto as Exhibit K). Defendants have likewise boasted that "[t]oday's hottest way of sharing MP3 files over the Internet is Usenet; forget about all the peer-to-peer software applications, which quickly become outdated. . . . MP3 Newsgroups are the ultimate way of sharing as they are well organized and allow the users to find what they are looking for quickly and effortlessly." *Mp3 Newsgroups, available at* http://www.usenet.com/articles/mp3_newsgroups.htm (Exhibit B).

28.    To further attract subscribers through the draw of copyright infringement, Defendants also intentionally designed their service as a haven in which infringement can occur without detection. Defendants have claimed to have designed their service to ensure "anonymity" so that no one can know what content individual users are copying and disseminating. Defendants have marketed this feature on the Usenet.com website specifically to users who want to engage in copyright infringement by assuring them that they cannot be identified when they upload or download music (as they can be on P2P services). Defendants have specifically compared Usenet.com favorably in this respect to file sharing services "such as

KaZaa and LimeWire," where people "have been sued recently for downloading or posting music files." *See Usenet Censorship, available at* http://www.usenet.com/articles/usenet_censorship.htm (last visited October 5, 2007) (attached hereto as Exhibit L).

29.    Defendants also provide and market ever-increasing "retention times" for their binary newsgroups – *i.e.*, the amount of time that the infringing files will be retained on the Defendants' system and made available to users.  Longer retention times are tremendously attractive to users who want to use the Usenet network to obtain copyrighted music without paying for it, as it means access to a greater number of copyrighted sound recordings at any given time.  Thus, providers of newsgroup access, such as Defendants, compete on the basis of long retention times to attract those users.  Defendants have bragged on the Usenet.com website that Usenet.com "is constantly increasing our retention rates and staying ahead of the competition," explain that in order to increase retention time Usenet.com dedicates servers to particular newsgroups, including a server that "is just for mp3s," and promised to offer up to "150 Days Retention." *Frequently Asked Questions about Usenet and Newsgroups, available at* http://www.usenet.com/faq.htm (last visited October 5, 2007) (attached hereto as Exhibit M); *Newsgroup Retention, available at* http://www.usenet.com/articles/newsgroup_retention.htm (last visited October 8, 2007) (attached hereto as Exhibit N).

30.    By promoting Usenet.com as a haven for copyright infringers and marketing it to communities of infringers with the prospect of access to copyrighted sound recordings for free, Defendants have made the service more attractive to those seeking to commit copyright infringement, thereby perpetuating the massive infringement that Defendants facilitate and ensuring more revenues to Defendants.

***Defendants' Failure to Take Action To Stop Infringement***

31.     Defendants have the right and ability to supervise and control the infringing activities that occur through the use of the Usenet.com newsgroup service, yet refuse to exercise that right. Defendants have absolute control over the content on their servers and access to that content. Defendants can delete postings from the servers that they control, can cease to offer newsgroups containing obviously infringing content, can filter the content being posted to their servers with available technology to stop the ongoing copyright infringement, and can terminate access of subscribers engaged in the uploading and downloading of copyrighted sound recordings.

32.     Among other things, Defendants can and, when they choose to do so, do track subscribers' uploading and downloading activity. Defendants manage download limits and have the technical ability to ascertain the messages posted by their subscribers. If the subscriber exceeds his or her subscription, then the Usenet.com service offers a menu of options to users reflecting Defendants' high level of control over the accounts – including to upgrade to allow more downloading, to purchase more bandwidth for that month, or to wait for the account to reset. *See Usenet.com Pricing and Plans*, *available at* https://signup.usenet.com/signupT2.cfm (last visited October 5, 2007) (attached hereto as Exhibit O). The Usenet.com website also states in its "Privacy Policy" that it "maintains a log of posts to newsgroups through the Service by each Service user," which it uses for its "own internal business purposes only." *Usenet.com Privacy Policy*, *available at* www.usenet.com/privacy.htm (last visited October 5, 2007) (attached hereto as Exhibit P).

33.     Defendants, via the Usenet.com website, expressly retain the right to suspend or terminate a subscriber's account based on user activity. *See Usenet.com Code of Conduct*, *available at* http://www.usenet.com/code_of_conduct.htm (last visited October 5, 2007)

(attached hereto as Exhibit Q). The Usenet.com website's "Copyright Policy" nominally prohibits subscribers from "posting, distribution, or reproduction in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior written consent of the owner of such proprietary rights." *Usenet.com Copyright Policy, available at* http://www.usenet.com/copyright.htm (last visited October 5, 2007) (attached hereto as Exhibit R). Defendants, via the Usenet.com website, nonetheless expressly promises their users that they will *not* take action against users for downloading infringing material. Thus the Usenet.com website disclaims any intent to take action against repeat infringers who use Usenet.com to download infringing material. *Id.*

34. Defendants have received repeated notice to Usenet.com from copyright owners, including Plaintiffs, of infringements by users, mass infringements through particular newsgroups, and repeat infringements of specific sound recordings. Despite such notices and for months after the commencement of this action, Defendants continued to carry obviously infringing newsgroups, refused to remove from their servers all copies of copyrighted sound recordings identified to Defendants through such notices, and continued to market their service as a means to infringe copyrights.

35. Despite the ability to control the infringement facilitated by their service, Defendants have failed to take sufficient action to stop or minimize the infringement. For months following the commencement of this action, Defendants refused to cease carrying obviously infringing newsgroups and refused to remove from their servers all copies of copyrighted sound recordings identified to Defendants by Plaintiffs. Indeed, after temporarily disabling some of the obviously infringing newsgroups in order to distort evidence in this litigation, Defendants made the decision to host, reproduce and distribute these groups once

18

again for a specific period of time. Defendants have failed to take action against users of their service engaged in repeated acts of infringement by uploading and downloading copyrighted works. Moreover, for many months after the commencement of this action, Defendants failed to adopt any filtering solutions, despite the ready availability of such methods or technologies.

36.    Defendants' continued hosting and facilitation of blatant copyright infringement, despite having received repeated notice thereof, is unsurprising in light of the Defendants' dependence on infringement as part of their business model. Defendants' business depends on the volume of their subscribers, and on the volume of files that their subscribers upload and download. Defendants have directly profited from the reproduction and distribution of sound recordings at the expense of Plaintiffs' copyrights.

<u>**CLAIM ONE FOR RELIEF**</u>

**(Direct Copyright Infringement – Infringement of Plaintiffs' Distribution Right)**

37.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 36 as if fully set forth herein.

38.    Defendants, without the permission or consent of Plaintiffs, and without authority, have distributed Plaintiffs' copyrighted sound recordings to the public by making available for download and disseminating to Usenet.com subscribers copies of those sound recordings housed on Usenet.com's and Sierra's servers, including but not limited to the non-exhaustive list of sound recordings specified in Exhibit A hereto. Defendants have also distributed those same recordings to the public by distributing copies of Plaintiffs' sound recordings uploaded by Usenet.com subscribers to other Usenet providers that host the same newsgroups, as well as the subscribers of such other services. Defendants have engaged in several affirmative, volitional acts to cause Plaintiffs' works to be distributed to their subscribers apart from any specific user input, including making the proactive decision to carry specific newsgroups whose infringing

19

purpose is apparent; making the recent proactive decision to re-enable those groups; and copying and sorting newsgroups and articles containing Plaintiffs' works across their various servers used to provide their service to subscribers.

39.     Such distribution of permanent copies of sound recordings to Usenet.com subscribers constitutes infringement of Plaintiffs' registered copyrights and the exclusive rights under copyright in violation of 17 U.S.C. § 106(3).

40.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

41.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

42.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages as well as Defendants' profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

43.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

44.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## CLAIM TWO FOR RELIEF

### (Direct Copyright Infringement – Infringement of Plaintiffs' Reproduction Right)

45.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46.     Defendants, without the permission or consent of Plaintiffs, and without authority, have made and caused to be made unauthorized copies of Plaintiffs' copyrighted sound recordings by reproducing and storing copies of such recordings on Usenet.com and Sierra servers to be further downloaded, accessed, and reproduced by Usenet.com subscribers, including but not limited to the non-exhaustive list of sound recordings specified in Exhibit A hereto.  Defendants have engaged in several affirmative, volitional acts to cause Plaintiffs' works to be reproduced on their servers apart from any specific user input, including making the proactive decision to carry specific newsgroups whose infringing purpose is apparent; making the recent proactive decision to re-enable those groups; and copying and sorting newsgroups and articles containing Plaintiffs' works across their various servers used to provide their service to subscsribers.

47.     Such reproduction of copies of sound recordings on Usenet.com and Sierra servers to be downloaded by Usenet.com subscribers constitutes infringement of Plaintiffs' registered copyrights and the exclusive rights under copyright in violation of 17 U.S.C. § 106(1).

48.     The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

49.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

50.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages as

well as Defendant's profits from infringement, as will be proven at trial pursuant to 17 U.S.C.

§ 504(b). Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount

of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may

be proper pursuant to 17 U.S.C. § 504(c).

51.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17

U.S.C. § 505.

52.     Defendants' conduct is causing, and unless enjoined and restrained by this Court

will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for

or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their

copyrights and exclusive rights under copyright.

## CLAIM THREE FOR RELIEF

### (Inducement of Copyright Infringement)

53.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through

52 as if fully set forth herein.

54.     Usenet.com users have created and distributed unauthorized reproductions of

Plaintiffs' copyrighted sound recordings, including but not limited to the non-exhaustive list of

copyrighted sound recordings specified in Exhibit A hereto, and therefore are liable for direct

copyright infringement of Plaintiffs' exclusive rights of reproduction and distribution under 17

U.S.C. § 106(1) & (3).

55.     Defendants are liable under the Copyright Act for inducing the infringing acts of

Usenet.com subscribers. Defendants collectively operate and maintain the Usenet.com service

with the object of promoting its use to infringe Plaintiffs' copyrights.

56.    Defendants' inducement of copyright is apparent from, among other things: Defendants' open attempts to market Usenet.com as an alternative to peer-to-peer services for downloading "free" music, movies, and software, thus intentionally trying to attract customers intent on using the service to infringe; their encouragement of infringement by Usenet.com users by touting the availability of copyrighted sound recordings via the Usenet.com service; the staggering amount of infringing content available through the binary newsgroups to which Usenet.com provides access; Defendants' touting of the Usenet.com service's encryption and anonymity features; Defendants' repeated increases in message retention time, thereby ensuring that infringing works are accessible for longer periods and in greater variety; Defendants' failure for months following the commencement of this action to take readily available steps to block access to infringing works, for example by declining to carry newsgroups that are obviously dedicated to copyright infringement, failing to remove infringing postings, failing to take action against infringing subscribers, and failing to adopt filtering solutions despite the availability of effective technologies for doing so; and Defendants' business model itself, which plainly depends on infringement, as evidenced by among other things the fact that Usenet.com's subscription fees increase based on the quantity of material a user downloads and its encouragement to users that they should pay higher fees to be able to download greater quantities of sound recordings.

57.    The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

58.    Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

59.     Through the conduct described above, Defendants have induced and are inducing infringement of Plaintiffs' copyrights and exclusive rights under copyright, in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

60.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages as well as Defendants' profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

61.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

62.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## CLAIM FOUR FOR RELIEF

### (Contributory Copyright Infringement)

63.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

64.     Usenet.com users have created and distributed unauthorized reproductions of Plaintiffs' copyrighted sound recordings, including but not limited to the non-exhaustive list of copyrighted sound recordings specified in Exhibit A hereto, and therefore are liable for direct

copyright infringement of Plaintiffs' exclusive rights of reproduction and distribution under 17 U.S.C. § 106(1) & (3).

65.    Defendants have actual and constructive knowledge of Usenet.com subscribers' infringing activity occurring through use of the Usenet.com newsgroup service, including, among other things, because: Usenet.com and Sierra host the infringing content on servers that each controls and the nature of the infringing material being stored, uploaded, and downloaded is readily apparent; Defendants offer access to numerous newsgroups that are expressly dedicated to infringing activity; Defendants knowingly market to users via the Usenet.com website that infringing material is available through that service; and Defendants have been repeatedly informed of the vast amount of infringing content on Usenet.com and Sierra servers, including specific sound recordings, and representative lists of sound recordings, that are being stored on those servers and made available to Usenet.com users..

66.    Defendants cause and/or otherwise materially contribute to Usenet.com subscribers' copyright infringement, including by: activating and maintaining each Usenet server feed such that Usenet.com subscribers can copy and distribute Plaintiffs' copyrighted works; creating and maintaining the servers used by Usenet.com and Sierra that host copies of Plaintiffs' copyrighted works; choosing to host numerous newsgroups that are expressly dedicated to infringing activity; activating, maintaining, and supporting Usenet.com subscribers' individual accounts used to post and/or download infringing content from Usenet.com servers; and providing features that facilitate users' infringement, such as long retention times and software to facilitate anonymity, thereby making the service a haven for copyright infringement.

67.    The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

68.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

69.     Through the conduct described above, Defendants are contributorily infringing Plaintiffs' copyrights and exclusive rights under copyright, in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

70.     As a direct and proximate result of Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages as well as Defendants' profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

71.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

72.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## CLAIM FIVE FOR RELIEF

### (Vicarious Copyright Infringement)

73.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 72 as if fully set forth herein.

74.     Usenet.com users have created and distributed unauthorized reproductions of Plaintiffs' copyrighted sound recordings, including but not limited to the non-exhaustive list of

26

copyrighted sound recordings specified in Exhibit A hereto, and therefore are liable for direct copyright infringement of Plaintiffs' exclusive rights of reproduction and distribution under 17 U.S.C. § 106(1) & (3).

75.    Defendants are liable under the Copyright Act as vicarious copyright infringers for the infringing acts of Usenet.com subscribers.

76.    Defendants have the legal right and actual ability to supervise and control the infringing activities that occur through the use of the Usenet.com newsgroup service.  Among other things, the infringing material is physically present on Usenet.com's and Sierra's servers, giving Defendants the ability to police and control that content.  Defendants choose the newsgroups offered to Usenet.com subscribers, electing to offer newsgroups dedicated to infringing content.  Defendants also have the practical ability to identify and take actions against subscribers engaged in infringement, but choose not to do so.  Defendants, through their Usenet.com terms of service, further retain the legal right to control individual subscribers' infringing activity including by terminating subscriber accounts.

77.    Defendants at all relevant times have derived a direct financial benefit attributable to the infringement by users of Plaintiffs' copyrights by Usenet.com subscribers.  Not only does the availability of infringing material on Usenet.com serve as a draw that attracts customers to Usenet.com's service (a draw that Defendants actively promote), but Usenet.com's account pricing is tied directly to the amount that each subscriber downloads from the service.  Thus, Defendants earn greater revenues the larger the amount of infringing material that Usenet.com's subscribers download.

78.    The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

79.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

80.     Through the conduct described above, Defendants are vicariously infringing Plaintiffs' copyrights and exclusive rights under copyright, in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

81.     As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages as well as Defendants' profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b).  Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

82.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

83.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their copyrights and exclusive rights under copyright.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.     For a permanent injunction enjoining Defendants and their respective agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert with each or any of them, from:

(i)     aiding, encouraging, enabling, inducing, causing, materially contributing

to, or otherwise facilitating the unauthorized reproduction, downloading,

uploading, and/or distribution of copies of Plaintiffs' copyrighted works,

whether by using the Usenet.com service or by any other means; and

(ii)    downloading, uploading, and/or otherwise reproducing or distributing

Plaintiffs' copyrighted works, whether by using the Usenet.com service or

by any other means.

B.      For all actual damages to which Plaintiffs may be entitled, including Defendants'

profits, in such amounts as may be found pursuant to 17 U.S.C. § 504(b).  Alternatively, at

Plaintiffs' election, for statutory damages in the maximum amount allowed by law.

D.      For prejudgment interest according to law.

E.      For Plaintiffs' attorneys' fees, and full costs and disbursements in this action.

F.      For such other and further relief as the Court may deem proper and just.

Respectfully submitted,

By: _____

| | |
|---|---|
| Kenneth L. Doroshow | Steven B. Fabrizio |
| Scott A. Zebrak | JENNER & BLOCK LLP |
| RECORDING INDUSTRY | 601 Thirteenth Street, NW |
|   ASSOCIATION OF AMERICA | Suite 1200 South |
| 1025 F Street, NW | Washington, DC 20005 |
| 10th Floor | tel. (202) 639-6000 |
| Washington, DC 20004 | fax (202) 639-6066 |
|  tel. (202) 775-0101 | |
|  fax (202) 775-7253 | -and- |

Gianni P. Servodidio
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
tel. (212) 891-1690
fax (212) 891-1699

*Attorneys for Plaintiffs*

DATED:  August 14, 2008