UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ARISTA RECORDS LLC, ATLANTIC                          :
RECORDING CORPORATION, BMG MUSIC,                     :
CAPITOL RECORDS, LLC, CAROLINE                        :
RECORDS, INC., ELEKTRA ENTERTAINMENT                  :    07 Civ. 8822 (HB)
GROUP INC., INTERSCOPE RECORDS, LAFACE                :
RECORDS LLC, MAVERICK RECORDING                       :    OPINION &
COMPANY, SONY BMG MUSIC                               :    ORDER
ENTERTAINMENT, UMG RECORDS, INC.,                     :
VIRGIN RECORDS AMERICA, INC.,                         :
WARNER BROS. RECORDS, INC.,                           :
and ZOMBA RECORDING LLC,                              :
                                                      :
                             Plaintiffs,              :
                                                      :
        -against-                                     :
                                                      :
USENET.COM, INC., SIERRA CORPORATE                    :
DESIGN, INC., and GERALD REYNOLDS,                    :
                                                      :
                             Defendants.              :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:[1]**

In this copyright infringement action, this Court previously granted Plaintiffs'[2] motion for summary judgment in its entirety, granted Plaintiffs' motion for terminating sanctions in part, and dismissed Defendants'[3] cross-motion for summary judgment as moot. *See Arista Records, LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 129 (S.D.N.Y. 2009) (hereinafter the "Liability Decision"). The action was then referred to Magistrate Judge Theodore H. Katz for an inquest on damages. On February 2, 2010, Magistrate Judge Katz issued a detailed and articulate 23-page Report and Recommendation ("R&R"), in which he recommended that Defendants be held jointly and severally liable for statutory damages in the amount of $6,585,000. On February 15,

---

[1] Mark McDonald, a third year law student at NYU School of Law, and a 2009-2010 intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

[2] Plaintiffs are Arista Records LLC, Atlantic Recording Corporation, BMG Music, Capital Records, Inc., Caroline Records, Inc., Elektra Entertainment Group, Inc., Interscope Records, LaFace Records LLC, Maverick Recording Company, Sony BMG Music Entertainment, UMG Recordings, Inc., Virgin Records America, Inc., Warner Brothers Records, Inc., and Zomba Recording LLC (collectively, "Plaintiffs").

[3] Defendants are Usenet.com, Inc. ("UCI"), Sierra Corporate Design, Inc. ("Sierra"), and Gerald Reynolds (collectively, "Defendants").

1

2010, Defendant Gerald Reynolds timely filed objections to Magistrate Judge Katz's R&R pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72.[4] For the following reasons, after considering Reynolds's objections, and reviewing the remainder of the R&R for clear error, this Court approves, adopts, and ratifies Magistrate Judge Katz's R&R in its entirety.

## I. BACKGROUND

### A. Procedural History

Plaintiffs commenced this action on October 12, 2007, alleging (1) direct infringement of Plaintiffs' exclusive right of distribution, (2) inducement of copyright infringement, (3) contributory copyright infringement, and (4) vicarious copyright infringement,[5] for which Plaintiffs sought damages and injunctive relief. The case was referred to Magistrate Judge Katz for general pretrial supervision. Defendants' conduct during discovery was "dilatory at best, if not entirely evasive," *see* R&R at 2, and Magistrate Judge Katz sanctioned Defendants for spoliation of certain relevant evidence. *See Arista Records, LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 442-43 (S.D.N.Y. 2009). Plaintiffs then moved for summary judgment and sanctions pursuant to Rule 37(b)(2) (the latter based on additional misconduct by Defendants, which included "wiping" seven hard drives containing relevant evidence), and Defendants cross-moved for summary judgment based on their affirmative defense that they were protected under the safe harbor provision of the by the Digital Millennium Copyright Act ("DMCA").. In my decision of June 30, 2009, I precluded Defendants from proceeding with their affirmative defense under the DMCA's safe harbor provision, and with that Defendants' cross-motion was mooted. Further, I found that there was no issue of material fact as to Defendants' joint and several liability on all of Plaintiffs' claims. Accordingly, I referred the action to Magistrate Judge Katz for an inquest on damages.[6]

---

[4] Plaintiffs then submitted a response to Reynolds's objections on March 4, 2010.

[5] The Amended Complaint, filed September 17, 2008, also alleged direct infringement of Plaintiffs' exclusive right of reproduction, but since Plaintiffs appear to have dropped this claim, *Arista*, 633 F. Supp. 2d at 129 n.2, this Court did not consider it in its Liability Decision. *Id.*

[6] Matters were complicated somewhat by the bankruptcy filings of the two corporate defendants in this action, Sierra and UCI. Sierra filed for bankruptcy on May 21, 2009. Thus, pursuant to the automatic stay imposed by 11 U.S.C. § 362(a), the Liability Decision, issued on June 30, 2009, did not apply to Sierra. Following the Liability Decision, which only applied to Reynolds and UCI, UCI filed for bankruptcy on August 21, 2009. However, on November 3, 2009, the Bankruptcy Court lifted the automatic stay with respect to both UCI and Sierra for all purposes. This Court then granted Plaintiffs' motion for terminating sanctions and summary judgment against Sierra "to the same extent and for all the reasons set forth" in the Liability Decision. *See* Dec. 11, 2009 Order. As a result, all Defendants are now before this Court, and this Order applies to each with equal force.

**B.        Magistrate Judge Katz's Report & Recommendation**

After a carefully reasoned application of section 504(c) of the Copyright Act to the facts of this case, Magistrate Judge Katz recommended that Defendants be held jointly and severally liable for $6,585,000. Plaintiffs had sought statutory damages of $131,700,000. They arrived at this number by multiplying the number of works alleged to have been infringed (878) by the maximum amount of statutory damages allowed for willful infringement ($150,000 per infringement; *see* 17 U.S.C. § 504(c)(2)).   In response, Reynolds[7] did not dispute the number of works infringed but suggested that the Court award the minimum amount of damages available for innocent infringement ($200 per infringement; *see id.*).  Thus, Reynolds urged that damages be assessed at no more than $175,600.

First, Magistrate Judge Katz noted that Plaintiffs had elected to receive statutory damages, which are based on the number of works infringed rather than the number of times a defendant infringed each work.  Magistrate Judge Katz calculated the number of works infringed to be 878, noting that there was no dispute among the parties about this number. The next step in the analysis was to calculate the amount of damages to award Plaintiffs for each work infringed by Defendants. Magistrate Judge Katz considered seven relevant factors that he identified from the caselaw: (1) expenses saved and profits earned by the infringer, (2) revenues lost by the plaintiff, (3) the value of the copyright to the plaintiff, (4) the deterrent effect the award would have on those other than the infringer, (5) the willfulness of the infringer's conduct, (6) whether the infringer cooperated in providing records to assess the value of the material infringed, and (7) the likelihood that the award will discourage the defendant from repeating its infringement. *See* R&R at 8-9 (citing *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *U2 Home Entertainment, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 04 Civ. 6189, 2008 WL 3906889 (S.D.N.Y. Aug. 21, 2008); *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 362 (S.D.N.Y. 2003)).  In addition, Magistrate Judge Katz considered amounts that have been awarded in similar cases.  Ultimately, Magistrate Judge Katz arrived at

---

[7] Due to the automatic stay imposed by the Bankruptcy Court with respect to Sierra and UCI at the time this Court referred this case to Judge Katz for a determination of damages, neither corporate defendant submitted briefing to Judge Katz on this issue. However, since the stay was lifted, all parties have consented to have damages determined based on the submissions to Judge Katz by Plaintiffs and Reynolds. *See* Dec. 30, 2009  Stipulation & Order (Docket No. 300).

an amount of $7,500 for each work, which amounts to $6,585,000 in total. Finally, Magistrate Judge Katz rejected Defendants' argument that this amount offended due process.

### C. Reynolds's Objections

Though Reynolds was represented by counsel earlier in these proceedings, he is now *pro se*.[8] His sixteen objections to Magistrate Judge Katz's R&R, some of which overlap, run on for thirty-eight pages and are accompanied by a rather thick stack of exhibits. First, Reynolds argues that because he is now *pro se* he does not have access to discovery documents designated "attorneys' eyes only," so he is unable to "mount any type of defense." Reynolds Objections at 8. Second, Reynolds argues that Magistrate Judge Katz's recommended damages award is unconstitutionally excessive. Furthermore, Reynolds argues that Magistrate Judge Katz committed other errors, including that it was erroneous to find that Reynolds "willfully" infringed Plaintiffs' copyrights; that there was no finding of a "clear expression" of intent to induce infringement; that it was erroneous to award damages to deter non-parties; that Magistrate Judge Katz failed to recognize that Reynolds did not profit from the infringement; that the number of works infringed was improperly calculated; and that Magistrate Judge Katz erred in his "speculation" as to Plaintiffs' lost revenue.

## II. LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1); *New York District Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 414 (S.D.N.Y. 2009). This Court reviews *de novo* those parts of the R&R to which objections are made, and reviews the remainder for clear error. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Perimeter Interiors,* 657 F. Supp. 2d at 414. "When a party makes only generalized or conclusory objections, or simply reiterates his original arguments, the Court reviews a magistrate judge's report and recommendation for clear error." *Perimeter Interiors,* 657 F. Supp. 2d at 414. However, motions by *pro se* litigants "must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation marks and citations omitted).

---

[8] Though Reynolds states specifically that he is not an attorney (Objections at 1), his *pro se* filings throughout this action have borne the mark of a skilled attorney.

4

## III.  DISCUSSION

**A.    Law of the Case**

Many of Reynolds's objections are really directed at issues already decided by this Court in its decision on liability (dated June 30, 2009).  To the extent that Reynolds attempts to use this opportunity to argue with that decision, which was filed more than one year ago, the time to submit a motion for reconsideration has long since past.[9] *See* Local Civil Rule 6.3 ("Unless otherwise provided . . . , a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of judgment."). While the Court does have the power to make corrections before the entry of final judgment, *see* Fed. R. Civ. P. 54(b), "[a] trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment," CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4478.1 (2010). "As Justice Holmes has stated, the law of the case doctrine 'expresses the practice of courts generally to refuse to reopen what has been decided.'" *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)); *see also Cardwell v. Kurtz*, 765 F.2d 776, 778 (9th Cir. 1985) (finding district court did not err in refusing to reconsider its prior decision granting summary judgment).

I will, however, consider Reynolds's objections insofar as they relate to Magistrate Judge Katz's recommendation on damages, to the extent that they do not seek to relitigate issues already decided by this Court. *See Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979) ("The law of the case comes into play only with respect to issues previously determined").

**B.    Lack-of-Counsel Argument**

Though Reynolds was represented by counsel when this Court decided the parties' summary judgment motions, he and his counsel have since parted ways. On September 6, 2009, Reynolds moved before Magistrate Judge Katz for appointment of counsel but his motion was denied, in part because the only issues remaining to be decided—damages and, possibly, attorneys' fees—were not so complex as to require the assistance of counsel. *See* Sept. 10, 2009 Order. Reynolds now argues that because he is not represented by counsel, he does not have access to discovery documents designated "attorneys' eyes only," and that without access to such

---

[9] In fact, Reynolds did attempt to submit a late motion for reconsideration on October 19, 2009—nearly four months following the Liability Decision. Because it was so untimely, Reynolds's motion to permit late filing of his motion for reconsideration was denied. *See* Oct. 21, 2009 Order.

5

documents he cannot mount a proper defense in this action. To the extent Reynolds seeks access to confidential documents to reargue this Court's Liability Decision, his request is denied. Such documents were available to his attorneys when they briefed and argued the issues resolved by this Court in its Liability Decision. That decision is now the law of the case and there is no compelling reason to revisit it, much less to delay this action to allow Reynolds additional time to review documents relevant only to issues that are closed.

However, it is conceivable that some confidential documents could be relevant to the present issue—the determination of damages—which would thus work a hardship on Reynolds to the extent that he cannot access such documents. On the other hand, in connection with this issue, Plaintiffs submitted no documents to Magistrate Judge Katz to which Reynolds does not have access,[10] nor did Magistrate Judge Katz rely on any such documents in his analysis. Nor does Reynolds identify any category (general or specific) of confidential documents that he believes might aid him in connection with the issue of damages. Therefore, Reynolds is not entitled to appointment of counsel, nor will this Court postpone its decision in order to allow Reynolds access to unidentified confidential documents that have no apparent relevance to the determination of the present issue, which is the determination of *statutory* damages. *See* Fed. R. Civ. P. 26(b)(2)(C)

C.      **Constitutional Argument**

Next, Reynolds argues that the recommended damages—$6,585,000—are so excessive as to offend due process. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."). In recent years, the Supreme Court has addressed the constitutionality of large *punitive* damages awards. For example, in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the Court found that punitive damages 500 times the amount of compensatory damages, *id.* at 582, were "grossly excessive" after considering three "guideposts": (1) the "degree of reprehensibility" of the defendant's conduct, (2) the "disparity between the harm or potential harm" suffered by the plaintiff and the punitive damages award, and (3) the "difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Id.* at 574-75. In *State Farm Mutual Automobile Insurance Co. v.*

---

[10] The only confidential documents submitted by Plaintiffs in connection with the present issue were produced (and marked confidential) by Defendants, so Reynolds had access to them.

6

*Campbell*, the Court considered a punitive damages award 145 times the amount of compensatory damages, 538 U.S. at 412, against the same three guideposts and concluded that such award also ran afoul of the Due Process Clause. *Id.* at 429.  Though the Court declined to set a bright-line ratio for purposes of the Constitution, the Court noted that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425.

Reynolds argues that *statutory* damages awards, like those authorized by the Copyright Act, should be analyzed under this framework—i.e., the statutory damages award should be compared to the amount of Plaintiffs' "actual" damages. *See, e.g.*, *UMG Recordings, Inc. v. Lindor*, No. 05 Civ. 1095, 2006 WL 3335048, *3 (E.D.N.Y. Nov. 9, 2006) (observing that this argument is at least not frivolous).  As the Ninth Circuit has observed, "The Supreme Court has not indicated whether *Gore* and *Campbell* apply to awards of *statutory* damages.  We know of no case invalidating . . . an award of statutory damages under *Gore* or *Campbell*, although we note that some courts have suggested in dicta that these precedents may apply to statutory damage awards." *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 587 (9th Cir. 2007) (emphasis in original).  This Circuit suggested that minimum statutory damages in combination with the class action mechanism "may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages," thus implicating due process concerns.  *Parker v. Time Warner Enter. Co.*, 331 F.3d 13, 22 (2d Cir. 2003).  However, the case at bar is not a class action and is easily distinguished from *Parker*.

Reynolds argues that awarding $7,500 per song represents a ratio of statutory to actual damages of 21,000 to 1, clearly exceeding the *Campbell* Court's "single-digit ratio" admonition.  However, the ratio Reynolds suggests is not accurate.  Reynolds assumes that Plaintiffs' actual damages in this case are lost profits of 35 cents per download, multiplied by the number of works infringed.[11]  First of all, it is well-settled that a victorious plaintiff in a copyright infringement action need not prove actual damages if it elects to receive statutory damages instead, *see* 17 U.S.C. § 504(c)(1), so we do not know what the actual damages are in this case.  In any event, the error in Reynolds's reasoning is readily apparent: he assumes, without explanation and contrary to common sense, that each infringed work available through Defendants' service was

---

[11] If these were correct assumptions, the ratio of statutory to actual damages would be slightly greater than 21,000 to 1: (7500*878=6,585,000) / (0.35*878=307.3) = 21,711.18.

7

downloaded only once by a single subscriber.[12]  By contrast, Magistrate Judge Katz found that Plaintiffs could have suffered lost revenue of up to $20,000 per infringed song available through Defendants' service, based on the fact that Defendants had over 15,000 subscribers, each of whom might have otherwise purchased Plaintiffs' songs (for about $1.29 per song).  Based on this assumption, actual damages in this case would total $17,560,000 ($20,000*878). That is nearly *three times greater* than the amount of statutory damages recommended by Magistrate Judge Katz. Accordingly, I need not decide whether *Gore* and *Campbell* apply to statutory damages awarded under the Copyright Act. Reynolds's argument that the recommended amount offends due process is rejected.

### D.     Other Alleged Errors

Finally, Reynolds argues that Magistrate Judge Katz committed a number of other errors in his analysis. All of these objections are without merit.

Reynolds argues that Magistrate Judge Katz erred when he found that Defendants "willfully" infringed Plaintiffs' copyrights.  Section 504(c)(2) of the Copyright Act provides that "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  Willfulness in this context means that "the defendant had knowledge that its conduct represented infringement," *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999), or that "the defendant recklessly disregarded the possibility that its conduct represented infringement," *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) (internal quotation marks and citations omitted).  I already determined that "it is beyond peradventure that the Defendants knew or should have known of infringement by its users," *Arista*, 633 F. Supp. 2d at 155, and that Defendants "took active measures" to promote infringing activity through their service, *id.* at 148-49. Thus, Magistrate Judge Katz was correct to conclude that Defendants' infringement was "willful" within the meaning of § 504(c)(2).

Reynolds next argues that Magistrate Judge Katz erred in disregarding the lack of a "clear expression" made by Reynolds of an intent to induce infringement.  I presume this is a reference to the Supreme Court's opinion in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545

---

[12] In addition, the proper measure of actual damages would be lost revenues, not lost profits. Furthermore, as pointed out by Judge Katz, due to Defendants' discovery abuses, the 878 number is likely to be lower than the number of Plaintiffs' works actually infringed by Defendants. *See* R&R at 8 n.5 ("Plaintiffs likely could have proven a significantly larger number of infringements but for Defendants' misconduct during discovery.").

U.S. 913 (2005), in which the Court held that a distributor of a product capable of both infringing and non-infringing uses is liable for acts of copyright infringement by third parties using the product if the product is distributed "with the object of promoting its use to infringe copyright, as shown by *clear expression* or other affirmative steps taken to foster infringement." *Id.* at 918-919 (emphasis added).   Thus, this objection is directed at this Court's previous determination that Reynolds is liable for inducement of copyright infringement, a determination that I will not revisit at this time.  In any case, this Court has already considered *Grokster*, *see Arista*, 633 F. Supp. 2d at 150-54, and found that "based on the undisputed facts, . . . Defendants' intent to induce or foster infringement by its users on its services was unmistakable," *id.* at 154.

Next, Reynolds argues that Magistrate Judge Katz erred to the extent that he recommended an award of damages to deter non-parties to this suit. This argument is easily rejected, as the Second Circuit has explicitly recognized that this is an appropriate factor to consider in this context. *See Fitzgerald*, 807 F.2d at 1117 (among factors courts rely upon in deciding appropriate statutory damages awards is "the deterrent effect on others beside the defendant").

Next, Reynolds argues that Magistrate Judge Katz failed to recognize that Reynolds did not profit from infringement of Plaintiffs' works. Magistrate Judge Katz found that "while the Court cannot identify with exact certainty Defendants' profits, it is clear that Defendants consistently profited from their business, potentially earning more than $1 million per year from their infringing activities." R&R at 11. For the reasons discussed by Magistrate Judge Katz, *see* R&R at 9-11, this conclusion is reasonable and this Court adopts it.

Further, Reynolds argues that Magistrate Judge Katz improperly calculated the number of works infringed.  However, this figure was, if anything, artificially low, given the likelihood that Plaintiffs would have been able to prove that Defendants infringed more works but for Defendants' discovery abuses. *See* R&R at 8 n.5. Therefore, this Court adopts Magistrate Judge Katz's recommendation as to the number of works infringed over Reynolds's objection.

Finally, Reynolds argues that Magistrate Judge Katz erred in his "speculation" as to Plaintiffs' lost revenues.  First, Plaintiffs need not prove their actual damages where, as here, they elect to receive statutory damages instead. *See* 17 U.S.C. § 504(c)(1).  Moreover, for the reasons discussed above in response to Reynolds's due process objection, Magistrate Judge

9

Katz's estimation of Plaintiffs' lost revenues is eminently more reasonable than is Reynolds's. This Court agrees with Magistrate Judge Katz in this respect as well.

## IV. CONCLUSION

For the foregoing reasons, Reynolds's objections to Magistrate Magistrate Judge Katz's February 2, 2010 R&R are without merit, and because the remainder of the R&R is without clear error, this Court approves, adopts, and ratifies it in its entirety. Accordingly, judgment is entered against all Defendants, jointly and severally, for statutory damages in the amount of $6,585,000.

The Clerk of Court is directed to close this case and remove it from my docket.

**SO ORDERED**
September 16, 2010
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.